# Whitfield *v.* Riddle.

*Creditors' Bill in Equity for Settlement of Insolvent Estate,
and Condemnation of Equitable Assets.*

1. *Cross-bill.*—A cross-bill is in its nature defensive, and its subject
and purpose must be germane to the original bill; nor can it bring in
new matter entirely foreign, except, perhaps, in cases of set-off against
an insolvent complainant.

2. *Ratification of assumed agency.*—Affirmance of an assumed agency
in the disposition of property, when made with full knowledge of the
facts, is a single act; and when a party has once ratified such transac-
tion, he can not afterwards be heard to disaffirm it, when it turns out
different from his expectations.

[Whitfield v. Riddle.]

3. *When mortgagee is purchaser for value, and entitled to protection.* When a mortgage is given to secure an antecedent debt which is extended, and another debt contemporaneously contracted, the mortgagee is a purchaser for value; and he is entitled, as a *bona fide* purchaser, to protection against any trust or fraud on the part of the mortgagor in the acquisition of the mortgaged lands, of which he had no actual notice, nor knowledge of facts sufficient to charge him with constructive notice.

4. *Constructive notice, as implied from recitals of deed.*—Where the mortgagor's deed from his vendor shows that the legal title to the lands is in the heirs of a decedent, from whose administrator said vendor purchased, and that a part of the purchase-money is still unpaid, the mortgagee is chargeable with notice of the heirs' right to enforce a lien on the land, and can not claim protection against them; but these recitals would not charge him with notice of any fraud in the transaction between the mortgagor and his vendor by which the lands were acquired.

5. *Lis pendens, as constructive notice.*—*Lis pendens* is constructive notice only while the suit is pending, and does not affect a purchaser from one of the parties after the termination of the suit.

6. *Constructive notice, as implied from records and papers in matter of insolvent estate.*—The mortgagor having been bound as surety on his vendor's notes for the purchase-money, and, on his subsequent purchase of the lands, assuming the payment of these notes, but afterwards filing the paid notes as claims against the insolvent estate of his deceased vendor; the records and papers relating to that estate, showing no controversy or proceeding of any kind in reference to the land, do not charge the mortgagee with constructive notice of any fraud on the part of the mortgagor as against the creditors of the insolvent estate.

7. *Sale under mortgage, on credit, instead of cash.*—The fact that a sale under a power in a mortgage was made on credit, instead of for cash, would benefit the mortgagor and all persons interested in the estate, and would be no reason for avoiding the sale, when it is not shown that the agreement was calculated to forestall rival bidders, nor that the property brought less than its market value.

8. *Sub-purchase with notice, from mortgagee without notice.*—When a mortgagee occupies the position of a *bona fide* purchaser for value without notice, a purchaser at a sale under the mortgage is equally entitled to protection, notwithstanding public notice of an adverse claim is given at the sale.

APPEALS from the Chancery Court of Marengo.

Heard before the Hon. THOMAS COBBS.

The original bill in this case was filed on the 27th January, 1879, by Gains Whitfield, as a creditor of the insolvent estate of Nathaniel W. Riddle, deceased, on behalf of himself and all other creditors of said estate, against Archibald A. J. Riddle individually and as administrator of said estate, and against several other persons; and sought, principally, the removal of the settlement of said estate from the Probate Court, and the condemnation and sale of a tract of land, described as the "Mitchell place," for the satisfaction of the debts of the estate. The tract of land, which contained over two thousand acres, was bought by said N. W. Riddle, in May, 1860, at a sale made by R. T. Dade as the administrator of the estate of Jacob Mitchell, deceased; the agreed price being $59,000, for which he executed his seven notes, with said A. A. J. Riddle and

[Whitfield v. Riddle.]

others as his sureties. In January, 1862, N. W. Riddle conveyed said tract of land, with a dwelling house in the town of Linden, and other property, to said A. A. J. Riddle, who was his brother, on a recited consideration of $50,000; the latter assuming, as the deed stated, the payment of the unpaid notes due to Mitchell's estate. This deed was dated January 1st, 1862, but was not proved or recorded until December, 1865. N. W. Riddle died in 1866, leaving several of the notes due to the Mitchell estate still unpaid. Letters of administration on his estate were duly granted to one W. M. Johnson, and on his death letters of administration *de bonis non* were granted to said A. A. J. Riddle, by whom the estate was reported insolvent; and it was so declared on the 17th February, 1868. The complainant's debt was evidenced by a promissory note, dated April 3d, 1863, on which he brought suit against said Johnson as administrator, and recovered judgment against the administrator *de bonis non* in May, 1875; and this was duly certified and filed as a claim against the insolvent estate. A. A. J. Riddle paid $40,071 in compromise of the notes due to the estate of Mitchell, and on the 12th February, 1867, filed a claim against the estate of said N. W. Riddle, alleging that he paid the amount as surety for said N. W. Riddle.

In April, 1868, A. A. J. Riddle filed a bill in the Chancery Court of said county, against the executrix of the last will and testament of said Robert T. Dade, the heirs at law of said Jacob Mitchell, and said W. M. Johnson as administrator of the estate of N. W. Riddle; setting up his conveyance from N. W. Riddle, alleging his payment of the notes for the purchase-money of the land due to Mitchell's estate, and praying that the legal title to the lands might be vested in him by the decree of the court. Afterwards, Johnson having ceased to be administrator of said Riddle's estate, and A. A. J. Riddle having been appointed administrator *de bonis non*, the suit was revived against the latter as such administrator; and by consent, the bill having been dismissed as to Mitchell's heirs, a decree was rendered in favor of the complainant, vesting in him all the title to the lands theretofore vested in the executrix and widow of said Dade, and declaring that he was entitled to the rents which had accrued after the 1st January, 1866, and was not accountable to the estate of N. W. Riddle for such rents. This decree was rendered in June, 1869, and said Riddle was then in possession of the lands. Being indebted to John A. Winston & Co., commission-merchants in Mobile, and to Joel W. Jones & Co., their successors in business, said A. A. J. Riddle conveyed said lands, with two other tracts, by mortgage, or deed of trust, to said Joel W. Jones as trustee, to secure said indebtedness, the repayment of advances to

[Whitfield v. Riddle.]

be made by said Joel W. Jones & Co., and the reimbursement of certain moneys which they assumed to pay for said Riddle. This conveyance was dated the 15th June, 1872, and was duly admitted to record on the same day, on proof by one of the subscribing witnesses. The indebtedness secured by it aggregated over $15,000, consisting of the two debts past-due (about $5,000), the advances to be supplied ($2,500), and the debts assumed, over $7,500 ; and it contained a stipulation authorizing the trustee to sell the lands, for cash, if default should be made in the payment and satisfaction of the secured liabilities, on or before the 1st January, 1873. Winston Jones and John A. DePras were partners in business with said Joel W. Jones, and continued the business after his death under the name of Jones & DePras; and in April, 1878, said Winston Jones having been appointed trustee in the stead of Joel W. Jones, he sold the lands under the power contained in the mortgage, at the price of $10,500 ; S. P. Tate and D. L. Morgan becoming the purchasers, each of whom had married a daughter of said N. W. Riddle, deceased.

Winston Jones and DePras, as surviving partners, and Tate and Morgan, were made defendants to the bill, with said A. A. J. Riddle. The bill alleged that said conveyance by N. W. to A. A. J. Riddle embraced substantially all of the property the former possessed ; "that said deed bears on its face manifest evidence of fraud against creditors ;" that it was "not a *bona fide* transaction, nor founded upon any valuable consideration, but was in furtherance of some secret scheme, which can only be surmised," and that it "was intended by the said N. W. and A. A. J. Riddle to preserve the property of the said N. W. for his children." The bill alleged, also, that the proceedings in the said chancery suit, in which said A. A. J. Riddle obtained a decree vesting in him the legal title to the lands, were procured by fraud, and ought not to conclude the rights of complainant and other creditors of said N. W. Riddle's estate, who had no notice of the proceedings ; that said A. A. J. Riddle, as administrator, had a full and complete defense to that suit ; and that the money paid by him on the notes for purchase-money due to said Mitchell's estate was in fact assets of said N. W. Riddle's estate, which said W. M. Johnson, the administrator, had allowed to go into his hands because he was surety on said Johnson's administration bond. It was alleged, also, that Joel W. Jones, Winston Jones and DePras, through whose business house in Mobile all payments on account of the lands were made, "had notice of all the facts connected with said purchase, and particularly of the equities set up in this bill, before the execution of said deed of trust to J. W. Jones, or their knowledge of events in relation to said purchase

was such as should have put them on inquiry as to the fraud practiced by said A. A. J. Riddle, and, if they had prosecuted that inquiry by scrutinizing the proceedings in said chancery suit, they would have perceived the fraud;" that the sale under the power in the mortgage, at which Tate and Morgan became the purchasers, was contrary to the provisions of the mortgage, which required a sale for cash ; that they bought with full knowledge of the complainant's rights, of which public notice was given at the sale, and that they had paid no part of the purchase-money.

On these facts and allegations, the bill prayed that the decree in the chancery suit be declared fraudulent and void as against the creditors of the estate of N. W. Riddle, and vacated and set aside, or that A. A. J. Riddle be decreed to hold the legal title to the said lands in trust for the creditors of said estate ; that the deed of trust to Jones be declared void, and the sale to Tate and Morgan set aside ; that the lands be held and treated as assets of N. W. Riddle's estate, and be sold under the decree of the court, and that the settlement of said estate be removed, if necessary, into said Chancery Court.

An answer to the bill was filed by Jones and DePras, in which they denied all notice or knowledge on their part of any fraud in the transactions between N. W. and A. A. J. Riddle, or of any defect in the latter's title to the land, and claimed to be purchasers for valuable consideration without notice. An answer was also filed by Riddle, denying the charges of fraud in the transactions between himself and said N. W. Riddle, and denying the right of complainant, a subsequent creditor, to impeach the conveyance to him by said N. W. Riddle ; asserting that the conveyance was only a family arrangement between him and his brother, entered into when the latter was about entering into the Confederate army, and intended to provide against the contingency of his death, he then owing no debts except for the purchase-money of the land, the payment of which was assumed by respondent, and never having paid respondent for the house and lot in Linden in which he resided, and which was also conveyed by the deed ; and asserting that the claim for the purchase-money paid was filed against N. W. Riddle's estate, and the chancery suit was instituted and prosecuted, under the advice of counsel to whom all the facts were disclosed. He also filed a cross-bill, in which he alleged, among other things, that in the summer of 1877, in consequence of ill health, his mental faculties became deranged, and he was sent to an insane asylum in Atlanta, Georgia, where he was confined until the spring of 1878 ; that he did not recover his mental capacity until December, 1878 ; that while he was thus afflicted, and incompetent to transact any business, Tate and

Morgan undertook to settle up his business affairs, and entered into an agreement with Jones & DePras, under which Winston Jones was appointed trustee, the personal property conveyed by the mortgage delivered up, or sold at an agreed price, the mortgage foreclosed, and the lands bought by said Tate and Morgan, on credit, at an agreed price. The cross-bill prayed, among other things, that the appointment of Winston Jones as trustee, and the sales made by him, be each vacated and set aside; that he be required to account for all the property which went into his hands as trustee; that an account be stated between said complainant and Jones & DePras; and that the decree in the chancery suit be set aside, as founded in mistake.

The chancellor sustained a demurrer to the cross-bill, at the instance of Jones & DePras, and dismissed it; and on final hearing on pleadings and proof, holding that the complainant was not entitled to relief, he dismissed the original bill. From this decree the complainant appeals, and here assigns as error the dismissal of the original bill; and by consent indorsed on the transcript, A. A. J. Riddle assigns as error the decree dismissing his cross-bill.

S. CROOM, and GEO. G. LYON, for appellant.

EUGENE McCAA, for A. A. J. Riddle; and R. H. CLARKE, for the other appellees.

STONE, C. J.—A cross-bill is in its nature defensive. It must relate to, and be connected with the subject of the original bill, and can bring in no new matter entirely foreign to it, except, perhaps, in cases of set-off against an insolvent complainant. Some affirmative defenses, even against the complainant himself, can only be made under a cross-bill. The necessity of a cross-bill sometimes arises between the defendants, when, in equity, the burden of complainant's claim should be apportioned among two or more of such defendants. *Davis v. Cook*, 65 Ala. 617. Still, the subject and purpose of the cross-bill must be germane to the original bill. Some portions of the present cross-bill are not a proper subject for defensive pleading, to the case made by the original bill in this cause. It attempted too much—more than can be accomplished in one suit; notably, in a cross suit.

2. Another objection is fatal to this cross-bill. It will be observed that it was not filed until near two and a half years after the original bill was filed. It is also shown, in its own averments, that for one and a half, or two years, A. A. J. Riddle, the complainant therein, had knowledge of the unauthorized and illegal use that had been made of his property,

which furnishes the chief *gravamen* of his cross-bill.   On this subject he avers as follows:   "At first, orator was not disposed to interfere with the arrangement [the disposition of his property, of which he now complains], and to let it be carried out." Affirmance of an assumed agency, in a case like this, when done on knowledge of the facts, is a single act.   Parties, who once ratify such transaction, can not be heard afterwards to disaffirm it, when it turns out different from their expectations.   The law does not sanction such experiment.   The Chancery Court did not err in dismissing the cross-bill.

The present bill was filed in January, 1879, by a judgment-creditor of the estate of Nathaniel W. Riddle, and seeks to subject to the payment of said judgment a tract of land known as the "Mitchell place."   The debt, on which complainant's judgment was rendered, was contracted by Nathaniel W. Riddle, in the spring of 1863.   Nathaniel W. Riddle died, intestate, in December, 1866; suit was instituted on said claim in 1867, and, after protracted litigation, a judgment was recovered in the spring of 1875.   In 1868, while said suit was pending, the estate of N. W. Riddle was declared insolvent, and the judgment was certified to the Probate Court for allowance.   No question is raised on non-claim, or for failure to file against the insolvency.   No settlement of Riddle's estate has been had, and there has been nothing paid to the creditors.

The Mitchell lands were owned by Mitchell at the time of his (Mitchell's) death.   They were sold by the administrator in 1860, and Nathaniel W. Riddle became the purchaser on long time.   The purchase price was fifty-nine thousand dollars, for which he gave his notes with sureties, Archibald A. J. Riddle, his brother, being one of them.   The sale was reported to the court, and confirmed.   Nathaniel W. received no title to the lands, but only an obligation to make him title when the purchase-money was paid.   No valid, legal conveyance, devesting the title out of the heirs, has ever been executed.   Nathaniel W. took possession at the time he made the purchase, and remained in possession until his death.   When he died, in 1866, there remained unpaid of the purchase-money, with accrued interest, about forty thousand dollars.

By deed, absolute on its face, bearing date January 1st, 1862, Nathaniel W. Riddle conveyed to Archibald A. J. Riddle a large amount of property, real and personal, in which the Mitchell tract is embraced, on a recited consideration of fifty thousand dollars.   The granting clause of said deed, so far as the Mitchell tract is concerned, contains this language: "The said party of the second part [Archibald A. J. Riddle] agreeing to pay the balance which may be due on sundry

[Whitfield v. Riddle.]

notes given to R. T. Dade, adm'r est. Jacob Mitchell, deceased, for said tract of land, and for which the said party of the first part has a bond ' executed by said adm'r, and for which the said adm'r is to execute such titles as is required by law, when the balance of the purchase-money is paid." This deed had two subscribing witnesses, by one of whom its execution was duly proven, in December, 1865, while the said Nathaniel W. was in life; and the deed was then recorded in the proper office. As early as 1869, Archibald A. J. Riddle took possession of said land, and occupied it continuously afterwards until 1877, when it was sold under mortgages executed by him.

The claim to the Mitchell place, set up by Jones, the present claimant, is as follows: A commission-house in Mobile underwent several changes of partnership name, and of the persons forming the partnership. It was first composed of Winston and Jones, Sr.; next, Jones, Sr., and De Pras; third, Jones, Sr., De Pras and Jones, Jr.; fourth and last, Jones, Jr., and De Pras. We may not be precisely accurate in these several changes, but this is unimportant. The several changes were but successive proprietorships of the same business house. In each stage they were the commission-merchants of Archibald A. J. Riddle, advanced for him, accepted his drafts, raised money for him, and disposed of his produce. In 1872, A. A. J. Riddle first mortgaged the Mitchell placed to this mercantile house. The consideration of this mortgage was an antecedent ' debt, extended in consideration thereof for several months, and supplies then advanced, and afterwards furnished, according to the agreement on which the mortgage was given. The business relations were kept up, advances were continued to be made, mortgages were annually renewed, until, about 1877, A. A. J. Riddle was left indebted to the firm in a sum exceeding twenty thousand dollars, with the Mitchell place and Riddle's other property under mortgage for its payment. During all this time, and for three years preceding its inception in 1872, Archibald A. J. Riddle was in possession, and claiming the property as his own, under a recorded deed of bargain and sale from Nathaniel W. Riddle.

3. The pleadings, and agreements and admissions of counsel, found in this record, establish the following propositions, so clearly as to leave no room for doubt: First, that the debts claimed under the mortgage were *bona fide*, and subsisting, to the extent claimed by Jones & Co.; second, that they were contracted, in part, on a binding agreement to extend to a definite future time a valid debt due from Riddle, and, for the residue, on a consideration contemporaneous with the execution of the mortgage; and, third, that when all these debts were

[Whitfield v. Riddle.]

incurred, and mortgages executed, the mortgagees were without actual notice of any trust in, or fraud perpetrated by Archibald A. J. Riddle, in the matter of the Mitchell lands. This constitutes Jones & Co. purchasers of said lands ; and *bona fide* purchasers, unless they are chargeable with constructive notice. *Wells v. Morrow*, 38 Ala. 125 ; *Mobile Life Ins. Co. v. Randall*, 71 Ala. 220 ; *Cook v. Parham*, 63 Ala. 456 ; *Coleman v. Smith*, 55 Ala. 308.

4. It is contended for appellants, that there was fraud in the execution of the deed by Nathaniel W. to Archibald A. J. Riddle, and that each of the following facts and circumstances was sufficient to put the mortgage creditors on notice, which, if followed up, would have led to the discovery of the fraud. First : The deed from Nathaniel W. to A. A. J. Riddle shows on its face that the title was in Mitchell's heirs, and that Nathaniel W. had made only partial payment. The deed was sufficient to put purchasers on inquiry, but it was only such inquiry as the information pointed to. If Mitchell's heirs were asserting claim for unpaid purchase-money, Jones & Co. could not maintain against them the plea of *bona fide* purchaser without notice. The title deed itself gave notice of that. *Dudley v. Witter*, 46 Ala. 664 ; *Hodges Bros. v. Coleman & Carroll*, 76 Ala. 103. It suggested no inquiry which could have led to a discovery of supposed fraud in the conveyance by Nathaniel W. to Archibald A. J. Riddle.

5. It is urged in the second place, and is shown, that Archibald A. J. Riddle instituted a suit in chancery against the personal representative of N. W. Riddle, and against the heirs and representative of Mitchell, to perfect his title to the said Mitchell lands ; and that this ought to have put Jones & Co. on inquiry, as *lis pendens* concerning this identical property. That suit was terminated in Riddle's favor, in 1869, and Jones & Co. assert no claim to the land which antedates 1872. *Lis pendens* is constructive notice, only while the suit is pending, and not after its termination.—*Moon v. Crowder*, 72 Ala. 79 ; Leading Cas. in Eq. (4th Am. Ed.), vol. 2, part 1, pp. 193, 201.

6. A third argument urged is, that the record and files in the administration of Nathaniel W. Riddle's estate show that Archibald A. J. Riddle did not pay the Mitchell estate notes as a debt of his own, assumed in the purchase of the land from Nathaniel W., but as surety for the latter, for which he claimed re-payment from the said N. W's. estate. These notes, it will be remembered, were to be paid by Archibald A. J., as part purchase of the Mitchell land. He had filed them against his deceased brother's insolvent estate, as so much money paid for and on account of that estate. The record and files of the said N. W.'s estate do not appear to concern the land in contro-

[Ladiga Saw-Mill Co. v. Smith.]

versy, nor is it shown that any proceedings were being had in the Probate Court, in relation thereto, nor that Jones & Co. were in any way interested in that estate. This record and these proceedings contain no element of constructive notice to Jones & Co.

7. It is further urged for appellants, that the arrangement by which Winston Jones permitted Tate and Morgan to purchase the Mitchell lands on a credit, was a fraud which should avoid the foreclosure of the mortgage. Credit sales usually command higher prices than those made for cash. This would operate a benefit to the mortgagor, and to all others interested in his estate. There was nothing in the agreement calculated to forestall rival bidding, and it is not shown the property was sold below its market value. There is nothing in this objection.

8. At the mortgage sale under the power, complainants caused notice to be given of their claim, and of their intention to attack the conveyance for fraud. This can avail them nothing. Jones & Co., as we have shown, were *bona fide* purchasers, having a lien, and without notice. That lien would avail them nothing, if, when they came to foreclose their mortgage, a notice or warning to the by-standers could deprive the purchasers of the superior equities the mortgagees held. One of the advantages a prior lienor has, is that he transfers to a purchaser the superior rights the facts of the case confer on him. Less than this would render his paramount lien valueless. *Turner v. Wilkinson*, 72 Ala. 361.

The decree of the chancellor is affirmed.