[Randolph v. Webb, *et al.*]

# Randolph *v.* Webb, *et al.*

*Bill in Equity to set aside Deeds to Land and enforce a Trust therein.*

1. *Deed of trust; definite extension of time of maturity of debt; bona fide purchaser.*—Where a creditor definitely extends the time of the maturity of his debt, in consideration of the execution of a deed of trust by his debtor upon certain lands, and without notice of a third person's equity in said lands, such creditor is a *bona fide* purchaser for value, and is entitled to protection against the equities of such third person; and purchasers at the sale of said lands under said trust deed, succeeding to all the rights of the creditor for whose benefit it was executed, take the property freed from the equity of such third person, whether such purchasers are chargeable with notice thereof or not.

2. *Same; same; when there is a definite extension of time of the maturity of a debt.*—Where a deed of trust was executed on April 11, 1891, to secure an indebtedness partly overdue and the balance of which was evidenced by two promissory notes, one maturing April 22, and the other May 3, 1891, and the law day of the deed of trust was fixed at June 1, 1891, there is an extension of the maturity of the indebtedness to a definite time; and the creditor in whose behalf the deed of trust was executed is a purchaser for value, and is entitled, as a *bona fide* purchaser, to protection against any trust or fraud on the part of the grantor in said deed of trust in the acquisition of the lands conveyed therein, of which he had no actual notice, or knowledge of facts sufficient to charge him with constructive notice.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed by the appellant, Ryland Randolph, Jr., and averred the following facts: Ryland Randolph, Sr., the father of complainant, desiring to donate to his son the lands in question, purchased them from one Briggs, who was then the owner, for the use and benefit of the complainant; and on the 6th day of March, 1874, said Briggs, at the request of complainant's said father and for the consideration expressed in the deed, conveyed to him the said land in trust for the benefit of complainant, and the father accepted the trust, by executing the deed, which deed was duly probated and recorded in the probate office on the 10th day of

March, 1874. On the execution of said deed, said Ryland Randolph, Sr., took possession of said land pursuant to and under the trust therein set forth, and afterwards paid said Briggs in full for the same. By the deed the lands were conveyed to said Ryland Randolph, Sr., in trust for the use and benefit of complainant, and said trust was established and engrafted upon the same as follows: "That the said Ryland Randolph, Sr., should control, manage and direct the said lands until the termination of the trust, and use and appropriate the rents, profits and income of the same for complainant's use and benefit as he may see proper; to lease, mortgage or sell the same for complainant's use, re-invest the proceeds in such manner as he might think best for complainant's use and benefit, to make a good fee simple title to the purchaser with covenants of warranty; said trust to terminate upon the said Ryland, Jr., arriving at the age of 21 years; and then he shall have the right to take charge of the property." Ryland Randolph, Sr., retained possession of said lands under said trust until the 6th day of December, 1886, when he sold the same to the East Birmingham Land Company under the following circumstances: Said lands are situated in the suburbs of Birmingham, where at that time the price of real property had become, by reason of reckless speculation, greatly inflated and fictitious. This had given rise to a large number of private corporations, which were intended for speculation in lands and stocks, and which were certain to result in disaster to the ultimate holders of the stock in such companies. For the purpose of organizing a company of this sort, George Kelley and others bargained with the said Ryland Randolph, Sr., that they would organize said East Birmingham Land Company, and that the latter would convey said lands to the company at the price of one thousand dollars per acre, and receive payment therefor in the stock of said company, at the face value of one hundred dollars per share. Pursuant to said agreement said East Birmingham Land Company was organized and said land conveyed on the 6th day of December, 1886. Though the deed recites a consideration of one thousand dollars per acre, nothing was really paid for said land except stock in the company. In consideration of said deed, and in payment for the land said company issued to said

Ryland Randolph, Sr., in his own name, its stock to the amount of eighty thousand dollars, which was the sole consideration for the execution of the deed. The capital stock of the company was originally eight hundred and fifty thousand dollars. Each of the parties named as organizers of the company subscribed for 850 shares except one West, who subscribed for 840 shares, and Ryland Randolph, Sr., for 10. This stock was paid for by a conveyance of lands to the company; including that above described, and at the same time or soon after about four hundred thousand dollars of the stock of said company was issued to the above named and other organizers and promoters of said company. At the time of said conveyance, it was the purpose of the company and its aforesaid managers to issue and sell said stock on speculation. Under these circumstances they well knew, and it was a fact, that they were destroying the trust property.

The bill further charges that about the 11th day of April, 1891, the East Birmingham Land Company made a general assignment of its property, including the lands above mentioned, to D. H. Sumner for the purpose of securing the payment of its existing indebtedness. Said Sumner had notice of the trust. On the 7th day of July, 1891, Sumner, as trustee and assignee, sold the lands under the power contained in the deed of assignment to the defendants, Webb and Tompkins, and executed a deed to them, a copy of which is attached as an exhibit to the bill. This deed did not convey or purport to convey anything more than the interest of the East Birmingham Land Company in said lands, and the vendees took the same subject to the claims and equities of complainant, and Webb and Tompkins bought the land well knowing that the said Sumner could not convey the fee simple title thereto, being cognizant of the facts set forth in the bill. Said East Birmingham Land Company and Ryland Randolph, Sr., are both insolvent.

The bill prays that the deed made by Ryland Randolph, Sr., to the East Birmingham Land Company, the deed of assignment of said company to D. H. Sumner and the deed made by said D. H. Sumner to Webb and Tompkins, so far as they purport to convey the lands conveyed in trust for Ryland Randolph, Jr., be set aside and annulled; and the trust enforced against the land

in the hands of Webb and Tompkins, and for general relief.

The instrument which the bill describes as a deed of general assignment, executed by the East Birmingham Land Company to D. H. Sumner, is attached to the bill as an exhibit, and it shows that it was a deed of trust regularly executed by the East Birmingham Company, conveying all of its property, including the lands involved in controversy, to D. H. Sumner, as trustee, and that it was expressly recited therein that as the East Birmingham Land Company was indebted to several parties, the deed was executed for the purpose of securing that indebtedness, the granting clause of the deed being as follows : ''Now, therefore, in consideration of said indebtedness of the said corporation amounting to about thirty-seven thousand, five hundred dollars on the third day of March, 1891, and as security for said indebtedness, and in consideration of the premises, and in pursuance of the authority so vested by the said resolution of the said meeting of stockholders, as well as by the said resolution so adopted by said board of directors, it, the said party of the first part, the East Birmingham Land Company, has granted, bargained and sold, and does by these presents, grant, bargain, sell and convey unto the said D. H. Sumner, as party of the second part, trustee as aforesaid, all of its said land, and lots of land situated in Jefferson county, Alabama, &c. The deed of trust was executed on April 11, 1881, and its law day was June 1, 1991.

The several creditors for whose benefit the deed of trust was executed and the amount of the debts due to them, respectively, was shown by a schedule attached to the deed of trust. The aggregate indebtedness of the East Birmingham Land Company was something over $37,000. Of this amount there was due to the American National Bank $32,000. All of the indebtedness to the American National Bank accrued and was due prior to the execution of the deed of trust, except two notes, one of which, for $8,000, was due April 22, 1891, and the other for $10,000 was due May 3, 1891. It was shown by the evidence that there was default made by the East Birmingham Land Company in the payment of all of the indebtedness, and that at the instance of the American National Bank, Sumner, as trustee,

in said deed of trust, foreclosed the said deed of trust, under the power contained therein; that this sale was made on July 7, 1891, and James E. Webb and H. C. Tompkins became the purchasers thereat.

It was further shown that this sale was in all respects regular, and that a deed was executed to the said Webb and Tompkins, as such purchasers, by the trustee on July 7, 1891. The said Webb and the said Tompkins, each testified that they had never had notice of the complainant's equity, and there was no evidence introduced on the part of the complainant showing that they had either actual notice or constructive notice. It was shown that Webb and Tompkins purchased and paid the full value for the property.

On the final submission of the cause, on the pleadings and proof, the chancellor decreed that the complainant was not entitled to the relief prayed for, and ordered the bill dismissed. From this decree the complainant appeals, and assigns the rendition thereof as error.

WHITE & HOWZE and CARMICHAEL & THATCH, for appellants.—The deed made to Sumner was a general assignment. The evidence showed that it embraced substantially all, if not all, of the property of the East Birmingham Land Company, and was made to secure a then existing indebtedness of the company.—Code of 1886, § 1737; *Shirley v. Teal*, 67 Ala. 449; *Warten v. Mathews*, 80 Ala. 429.

If this deed is a general assignment, the grantee takes the property in the same plight and condition as the grantor held it, and the assignment will not affect existing equities. He is not a *bona fide* purchaser.—*Walker v. Miller*, 11 Ala. 1067; *Smith v. Perry*, 56 Ala. 266.

The assignee succeeds only to the rights of the assignor; he is bound and affected by all the equities and subject to all the defenses which could have affected the assignor or to which he could have been subject. He is in no just sense a purchaser for value or the representative of creditors.—*Smith v. Perry*, 56 Ala. 266; *Grangers, &c. v. Kamper*, 73 Ala. 327–346; *Cohn v. Stringfellow*, 100 Ala. 242.

It is settled in accordance with principles that an assignment made by a debtor in trust for the benefit of his creditors is not a conveyance for a valuable consideration

[Randolph v. Webb, *et al.*]

and neither the assignee nor the creditors thereby become *bona fide* purchasers.—2 N. Y. Chan. Reps., note, p. 177 and cases cited. Also cases cited 2 Pom. Eq., § 749, note to last clause of section on page 209 ; Burrell on Assignments, pp. 283–5.

Whether the deed to Sumner was a general assignment or not, it was certainly made to secure the then existing debts of the company, and the grantee therein was, therefore, not entitled to protection as a *bona fide* purchaser.—2 Pom. Eq., § 749 and cases cited on p. 207 ; *Alexander v. Caldwell*, 55 Ala. 517 ; *Boyd v. Beck*, 29 Ala. 704 ; *Wells v. Morrow*, 38 Ala. 126 ; *Banks v. Long*, 79 Ala. 319.

In order to make even a mortgagee a *bona fide* purchaser on account of any agreement with him to extend the debt, there must be a valid, binding *cotemporaneous* agreement of extension to a *certain definite future* time, so as to disable the creditor to sue before that time. It is taking from the creditor the right to sue which constitutes the consideration.—*Sweeney v. Bixler*, 69 Ala. 540 ; *Wood v. Robinson*, 22 N. Y. 564.

Again, merely taking a mortgage to secure the payment of a pre-existing debt does not suspend the right to sue though the law day is fixed beyond the time when the debt is due.—*U. S. v. Hodges*, 6 Howard, 279 ; *Cory v. White*, 52 N. Y. 138, and cases cited ; *Sweeney v. Bixler*, 69 Ala. 540 ; *Commercial Bank v. Brewer*, 71 Ala. 574.

JAMES E. WEBB, *contra.*—If the American National Bank, creditor of the East Birmingham Land Co., in order to get the security, gave an extension of its debt, (that bank was a beneficiary under the deed of trust to Sumner) extending time for the payment of its debt, made it a purchaser entitled to protection against the complainant's secret equities.—*Thames & Co. v. Rembert*, 63 Ala. 571 ; *Spiro v. Hornthal*, 77 Ala. 145. And whether Webb and Tompkins at the time of their purchase had notice or not, they are entitled to protection by reason of the fact that the bank, as a creditor, was entitled to it, just the same as one who purchased at a sheriff sale with notice at the time of a sale is entitled to protection against equities if the plaintiff in judgment acquires a lien without notice.—*Ohio Life Insurance Co. v. Ledyard*, 8 Ala. 871 ; *Daniel v. Sorrells*, 9 Ala. 437 ; *Turner v.*

*Wilkerson*, 72 Ala. 361; *Whitfield v. Riddle*, 78 Ala. 108; *Cahalen v. Munroe*, 56 Ala. 305.

If the mortgagee extends his debt in order to get the mortgage, he is a purchaser; and if, without notice, when he does so, he is entitled to protection.—*Whitfield v. Riddle*, 78 Ala. 107; *Thames v. Rembert*, 63 Ala. 572, and cases there cited. The burden of proof that the purchaser had notice is upon the complainant.—*Barton v. Barton*, 75 Ala. 402.

By the deed to Sumner the land company did not simply convey such interest as it had in the land; but conveyed the land itself. Under such a deed the creditor was entitled to protection as a *bona fide* purchaser, and the purchaser at the foreclosure sale of the deed of trust was entitled to like protection.—*Smith v. Perry*, 56 Ala. 266; *Smith v. Branch Bank*, 21 Ala. 125.

A mortgagee or beneficiary in a deed of trust who has loaned money or parted with anything of value, or who has even extended the time for the payment of his debt, in order to obtain the execution of such deed, is a *bona fide* purchaser for value, and is entitled to protection against latent equities, provided he had no notice of them.—*Smith v. Zurcher*, 9 Ala. 208; *Whitfield v. Riddle*, 78 Ala. 107; *Thames v. Rembert*, 63 Ala. 572.

McCLELLAN, J.—The deed of trust to Sumner being made to secure the debt, among others, of the American National Bank, which constituted more than five-sixths of the grantor's total indebtedness, all which was provided for in the deed, stands upon the same footing in respect of the inquiry whether the bank was a purchaser for value as if the security had taken the form of a mortgage directly to it. So that, while if the instrument involved only the security of the bank's existing debt, it could not occupy the position of a *bona fide* purchaser for value without notice, yet if the time of maturity of its debt against the grantor was definitely extended in consideration of the conveyance in trust, and it had in fact no notice of complainant's alleged equities, the bank's security thus arising will be protected against such equities; and purchasers at the sale under the trust deed succeeding to all the rights of the bank take the property freed from the complainant's claims thereto, whether such purchasers are chargeable with notice thereof or

[Birmingham National Bank v. Bradley.]

not.— *Whitfield v. Riddle*, 78 Ala. 99 ; *Thames v. Rembert*, 63 Ala. 561, 572 ; *Cahalan v. Monroe*, 56 Ala. 303.

The evidence, in our opinion, shows that the bank in consideration of the deed of trust made a valid and binding extension of the time of payment of its debt. That there was an agreement to extend it is clearly shown. That it was entered into upon the valuable consideration of the security to be afforded by the deed of trust is equally clear. Whether the extension was to a *definite time*, short of which the bank could not proceed, is the only really controverted point. The deed was executed April 11th, 1891. At that time $14,000 of the bank's debt was past due. ˙Of the balance $8,000 was to become due on April 22d, and $10,000 on May 3d, ensuing. The law day of the deed of trust was fixed at June 1st, 1891. The extension obviously was from the date of the deed of trust as to the indebtedness past due and from the maturity of the indebtedness thereafter falling due *to the first day of June, 1891*. And we hold that on this evidence the bank was entitled to protection as a *bona fide* purchaser without notice, and of consequence that Webb and Tompkins acquired the property at the trustee's sale freed from complainant's equities.

Affirmed.