27 553
120 614
120 615
120 616

## CAMP ET AL. vs. DILL.

[ASSUMPSIT ON NOTE GIVEN FOR HIRE OF SLAVES.]

1. *Admissions of one joint contractor admissible against others.*—In assumpsit against three joint makers of a promissory note, the admissions of one of the defendants are competent evidence against his co-defendants; at least, until the inference arising from the face of the note is rebutted, and it is shown that he is not jointly interested with the others.

2. *What conduct amounts to a breach of contract on part of owner or his agent.*—If a guardian hires out his ward's slaves, and afterwards deprives the hirer of their services during the term, by harboring them when run away, he is

Camp et al. v. Dill.

guilty of a breach of contract; but to make him responsible for the act of his ward in harboring the slave, he must be in some way connected with it, and it must be shown to have been done by his directions, or with his assent: it is not sufficient to show that he had previously allowed his ward to make contracts in relation to his own property, and had refused to entertain a proposition to rescind the contract until he had consulted his ward.

3. *Consolidation of separate and distinct contracts.*—If two slaves are put up separately at public auction to be hired, and knocked off to the same bidder, who was induced by the representations of the owner to bid for each under the expectation that he would get both, and a single note given for the amount of their hire, the two contracts are not thereby so consolidated that a breach of one would warrant a rescission of both.

4. *Rescission of contract by hirer.*—The charges in this case, tested by the principles laid down at a former term (22 Ala. 249), held correct.

APPEAL from the Circuit Court of Talladega.

Tried before the Hon. NAT. COOK.

THIS action was brought by Anderson Dill, guardian of John Goodwin, minor heir of Thomas Goodwin, deceased, against Joseph Camp, John Bell, and Ben. F. Burns, and was founded on the defendants' note for $125 50, for the hire of two slaves, named Carter and Alexander. The defendants pleaded separately, in short by consent, the general issue, want of consideration, and failure of consideration. For the previous report of the case, see 22 Ala. 249.

On the trial, as appears from the bill of exceptions, "the plaintiff proved that Burns, one of the defendants, a few days before the trial, admitted that he had seen the negroes mentioned in the note in the possession of said Camp, and in his service, subsequent to the date of said note, and during the year 1849; that about September of that year, he had hired the boy Carter from said Camp, for the remainder of the year; that the boy was then in the woods, but was soon afterwards recovered, and remained with witness, according to said hiring, with the knowledge and consent of said Camp, and for which said Camp received the hire of him. The defendant Camp objected separately to the introduction of these admissions as evidence against himself, on the ground that said Burns was a competent witness for the plaintiff, and had been summoned by him, and was excused from attendance by making the above admissions to plaintiff's counsel. The court overruled the objection, and defendant Camp excepted."

Camp et al. v. Dill.

" The defendant then offered evidence to show that the boy Carter ran away some time in the spring of 1849, and was out of his possession until the following September; and that said slave had no provocation, except a moderate whipping inflicted by the overseer. Defendant then offered proof, tending to show that John Goodwin, plaintiff's ward, had been married about two years before 1849 ; that Goodwin lived upon his farm, about ten miles from his guardian, and that his slaves lived on the farm and worked with him ; that said farm was about two miles from Camp's ; that Goodwin married plaintiff's daughter, and had been making contracts, under the direction and supervision of plaintiff, before 1849 ; that this was the state of things in 1848, but this possession of the property was during the nonage of Goodwin, and was permitted by his guardian under some confidential agreement between them ; that at the end of the year 1848, the estate, with all the slaves, returned into the possession of the guardian, and that Goodwin, with his family, during the year 1849, resided in St. Clair county, out of the possession of his estate. It was in proof, also, that said Camp, some time after the slaves had been in his possession under the hiring, had proposed a rescission of the contract to the plaintiff, and plaintiff said that he would see Goodwin before he acted on the subject; but nothing further was proved, in this connection, about the proposition to rescind. Upon this state of proof, the plaintiff moved to exclude from the jury the deposition of Polly Rodgers, so far as it related to Goodwin's harboring the boy Carter while in the woods in 1849, on the ground that the same was illegal. The court sustained the objection, and defendant Camp excepted." The testimony thus excluded was as follows : " She does not know the boy named Carter ; but in a conversation with John Goodwin, jr., about a negro that said Goodwin called Carter, who had been hired to Joseph Camp, Goodwin said that the negro had been whipped, and that he should not go back to Camp. Witness asked him, how he would get his pay, if he did not let the negro go back; and he replied, that he would find a way to get the money."

"In order to prove the terms and conditions of the hiring at the time it was made, and the plaintiff's representations as to the character and qualities of the two boys Carter and

Aleck, the defendant introduced the depositions of John Mac-
key and Mrs. Eliza Goodwin." Mackey testified, that he was
present at the hiring of the slaves, but arrived after it com-
menced; that he heard no terms mentioned, but Dill repre-
sented Aleck to be a good plowboy, and that he had been
plowing three years. Mrs. Goodwin was present at the hiring,
and heard all that was said; Carter and Aleck were hired
separately, but both were knocked off to Camp; they were
the last negroes hired, and Dill remarked, before putting them
up, that he had a couple of plowboys to hire. She further
testified to the capacity of the two boys.

" The evidence showed that the two boys were offered and
bid off separately; that the defendant Camp bid them off,
and it was afterwards agreed that one note should be taken
for the aggregate amount of the hire of both, which is the
note sued on. There was proof tending to show that Carter
ran away from Camp, some time in the spring, and remained
in the woods until some time in September; that Aleck was
not a good plowboy, and that he was of a weak mind, &c.,
but there was a conflict in the testimony upon this point. It
was proved that Dill and Camp lived about eight miles apart,
in Talladega county, and that there was a good public road
leading directly by their respective houses; that Camp, about
four weeks after he had hired the slaves, and while he had
them in his possession, went to plaintiff's house, and told him
that Aleck was not a good plowboy, was wanting in mental
capacity, &c., and that he desired to rescind the contract for
defects in said slave; that plaintiff replied, that he knew of
no such deficiencies in the slave, and that he would converse
with his ward upon the subject of the defendant's proposition.
The defendant gave in evidence, also, that plaintiff, in a sub-
sequent conversation with witness, admitted that defendant
had proposed a rescission of the contract for the hire of the
slaves.

" Upon this evidence, the court charged the jury, that if
they believed the slaves were offered and bid off separately,
and for different prices, notwithstanding the defendant was
the best bidder and hired them both, and afterwards, by agree-
ment, the note was given and received for the aggregate hire
of both; yet the hiring of each slave was a separate and dis-

tinct contract, and if there was a failure of consideration, or other breach of contract, as to one of the slaves only, the defendant could only claim the right of rescinding the contract as to that one. The defendant excepted to this charge, and requested the court to instruct the jury, that the contract, under the proof aforesaid, was one entire contract as to both slaves; and that defendant had a right to rescind as to both, if there was a breach of the contract as to one. The court refused to give this charge, and the defendant excepted.

"The court charged the jury, further, that in order to rescind the contract, the defendant was bound, if they believed from the proof that it could have been done conveniently, to tender back the slave or slaves, as to which he sought a rescission, to the plaintiff, and, without such offer to re-deliver the property, the offer to rescind would not be sufficient. And in this connection, the court further charged the jury, that if the plaintiff had refused, or had acted in a manner to show that he would not rescind, or receive the property, if it was offered back, then it would only be incumbent on the defendant to propose to rescind, and to return the property if plaintiff would accept it; and if the plaintiff refused to rescind, and waived the necessity of offering back the property, it would excuse the defendant from offering back the property, and would be a sufficient offer on his part to rescind. To both these charges the defendants severally excepted.

"The defendant Camp asked the court to instruct the jury, that if Dill, at the time of hiring, said that he then had two plowboys to hire, and represented to the defendant Camp that Aleck (one of the boys) was a good plowboy, and had plowed for three years; and if Camp, relying on such representations, was thereby induced to hire both of said boys, and did hire them both; and if the jury believe that Camp, at the time of the hiring, was induced by Dill to bid for both of said boys, under the belief that he would get both of them,— the contract would be entire, if he bid them both off, and executed his note for both of them. This charge the court refused to give, and the defendant excepted."

In the judgment entry the name of Joseph Camp only is stated as defendant, and the judgment is "that the plaintiff have and recover of the *defendant*" the damages assessed, &c.

From this judgment Camp sued out an appeal, and the condition of the appeal bond describes the judgment as having been rendered against Camp, Bell, and Burns. There is an agreement of record, signed by the attorney for the appellants, in these words: "It is agreed by counsel in this case, that no objection will be made to the appeal, on the ground that the bond misdescribes the judgment; and we consent, so far as we can lawfully do so as attorneys, that the judgment of the court below may be considered as amended so as to conform to the recitals of the bond, or that the bond may be considered amended so as to conform to the judgment; and in like manner that the appeal shall be considered as amended."

The errors assigned embrace all the rulings of the court shown in the bill of exceptions, which are above set out, and the rendition of the judgment against Camp alone.

MORGAN & MARTIN, for the appellant, contended,—

1. That the admissions of Burns should not have been received to destroy Camp's defence to the note. Although the defendants appeared to be joint contractors, on the face of the note, yet the other evidence in the case showed that Camp was the principal, and the others merely his sureties. Camp hired the slaves, took them into his possession, and kept them; and Burns had no connection with the transaction. Under these facts, there was no reason for allowing Burns to destroy Camp's defence to the note, by his admission of facts which militate against it; especially when, in order to be released as a witness, he made the admissions to the plaintiff's attorney. Such admissions are not against his interest, and have not that sanction for their truthfulness upon which such evidence is allowed.—Lewis v. Woodworth, 2 Comstock's R. 512; McCorkle v. Doby, 1 Strobh. 396; Daniel v. Nelson, 10 B. Mon. 316; Snell v. Allen, 1 Swan, 208; Dillard v. Dillard, 2 Strobh. 89; 13 N. H. 99; 7 Blackf. 170.

2. It was a good defence to the action, that Dill, or his agent, accomplice, or tool, had unjustly deprived Camp of the possession of either one of the slaves. The pleas presented this defence, and there was evidence relevant to it. Many facts are recited in the bill of exceptions, which tend, in a greater or less degree, to show Goodwin's agency for his

guardian in the care, custody, and control of the property. Dill refused to act on Camp's proposal to rescind, until he could consult with Goodwin. The deposition of Polly Rodgers, showing Goodwin's guilty participation in the fraud practiced on Camp, had been read in evidence, when the court assumed, by excluding it, to decide that it proved nothing in the case. If it was excluded, the other evidence of Goodwin's acts ought to have been excluded; and if the other evidence was relevant, so was this.—9 Ala. 313.

3. The first charge given by the court was calculated to mislead the jury. It assumes, that the defendant's only remedy, if there was a breach of contract as to one of the slaves, was to rescind the contract as to that one; whereas, if the facts stated existed, he might recoup the damages, or abate the recovery on the note to the extent of the damage he had sustained, although he did not claim a rescission.—Kenan v. Holloway, 16 Ala. 53; Camp v. Dill, 22 *ib.* 249; 9 *ib.* 10.

4. The proof shows that the two negroes, though put up separately, were hired together; that they were the last hired, and the understanding was that they should find their way into the hands of the same man. The contract was entire in its spirit, terms, and consideration.

WHITE & PARSONS, *contra*, made the following points:—

1. The admissions of Burns were certainly competent evidence against himself, and should therefore have been permitted to go to the jury. If Camp wished to avoid their effect, he should have asked a charge in regard to them.

2. At the time the deposition of Polly Rodgers was offered, nothing was shown to establish the fact that Goodwin's interference (if there was any) was with the consent or permission of Dill.—22 Ala. 261. In fact, the record shows that, at the close of 1848, Dill resumed the control and actual possession of the property; and the proof excluded relates to what Goodwin did (to be inferred from what he said) in 1849, at a time when he was not in possession of the property, and when his agency, if he ever had any, no longer existed. No citation of authority is necessary to establish the proposition that the acts or declarations of an agent, after his agency has ceased, are no longer admissible against his principal.

GOLDTHWAITE, J.—In the action of the court in receiving the admissions of Burns, there was no error. He was one of the defendants, as well as one of the makers of the note which was the foundation of the action, and which upon its face purported to be the joint contract of the parties whose names were signed to it; and being *prima facie* the joint contract of all, the admissions of either of the parties who were sued, as to facts connected with the issue, were admissible, at least until the inference arising from the form of the contract was rebutted, and it was shown that the party making the admissions was not jointly interested with the others. But as there was no evidence of this character at the time the testimony objected to was offered, the court could not properly have rejected it.

In relation to the exclusion of the deposition of the witness Rodgers: There can be no doubt, that if Dill, who hired the slaves to Camp, prevented the latter from availing himself of their labor and services during the period of the bailment, it would be a breach of the contract on his part; but if this was done by a third person, without any agency on the part of Dill, although such third person would be liable, Dill could not be held responsible. It can make no difference, in principle, that the negroes were taken by the ward (the owner of the slaves, and the beneficiary of the hire); for, in law, the contracts of the guardian are not those of the ward, and cannot be affected by his acts. In this aspect, therefore, it was not only necessary to establish that the act of Goodwin (the ward) contributed to deprive Camp of the services of the slaves, during the period for which he was entitled under his contract, but it was also necessary to connect Dill with the act. The witness, upon this point, states, that Goodwin was in the possession of the property, and had made contracts, under the direction and supervision of his guardian (Dill) before 1849; but that in the year 1848 all the slaves were in the possession of Dill, that the two boys were hired out by him on the 27th December, 1848, and that one of them ran away in the spring of 1849, and was prevented by Goodwin from returning to Camp, who hired him. Does this evidence furnish a just ground for the inference that Goodwin, in preventing the return of the slave to Camp, acted under the

direction, or with the assent of Dill? Does it tend to prove that such was the case? Conceding that he may have recognized the right of Goodwin to make contracts in relation to his property previously to 1849, this could not be regarded as an authority to break or rescind contracts made by the principal, neither would it warrant any inference of the direction or assent on the part of the principal to violate a contract made by him—an act which involves a tortious breach of duty. The evidence not tending to show any connection of Dill with the act of Goodwin, and there being no testimony previously offered tending to establish that fact, there was no error in excluding the deposition.

In relation to the first charge, it is too clear for argument, that if the contracts of hire were distinct and separate, the giving of a note for the aggregate amount agreed to be paid, would not, of itself, be a consolidation of the two contracts, so as to warrant the rescission of both, upon the breach of the one. The charge simply asserted this proposition, and was free from error.

The last charge requested was properly refused, as the evidence established that the slaves were hired separately, to the highest bidder. This being the case, if it is conceded that Camp was induced by the representations of the other party to bid for each of the slaves, under the expectation that he would obtain both, this would not convert the two contracts, which were essentially distinct and separate, into one entire contract. The belief of Camp, as to his being able to hire both slaves, had nothing to do with the transaction, and did not enter into its terms, or affect it in any way.

The second charge was also correct, according to the exposition of the law given by this court when the same case was last here.—22 Ala. 249, 258-59-60.

The question as to the rendition of the judgment against Camp alone, it is unnecessary to discuss, as the error in this respect, if any existed, is cured by the agreement of the counsel, that the record may be amended so as to include the names of the other defendants.

Judgment affirmed.