# Rovelsky *v.* Brown & Smith.

*Bill in Equity for Specific Performance of Contract.*

1. *Partnership dealing in real estate; sale by partner enforced against
partnership.*—When a partnership is engaged in the business of buy-
ing and selling real estate on speculation, one of the partners may
make a sale in the name of the partnership, and his bond for title,
executed in the firm name, will be specifically enforced against all
the partners.

2. *Copying depositions in transcript; cost.*—No costs will be allowed
for depositions copied into the transcript, unless the rule of practice ·
(Code, p. 803, Rule No. 25) is complied with.

APPEAL from the Chancery Court of Dale.

Heard before the Hon. JOHN A. FOSTER.

The facts of this case are very fully set out in the opinion.
Upon the final submission, the Chancellor granted the relief
to complainant as to one-half interest as owned by Brown,
and ordered a transfer to him of said one-half interest, but re-
fused to grant the relief as to the other half interest as owned
by Smith, and decreed that Smith was entitled to his half in-
terest in the property sold; but that all the property should
be held subject to the debts of the partnership.  The com-
plainant appeals from this decree and assigns the same as
error.

H. L. MARTIN, for appellant, cited 28 Ala. 304; 16 Ala. 581; Lind. on Partnership, p. 205; *Brunson v. Morgan*, 84 Ala. 598.

G. L. COMER, *contra*, cited Code of 1886, § 1730; *Brunson v. Morgan*, 76 Ala. 593; *Espy v. Comer, Ib.* 501; *Brewer v. Brown*, 68 Ala. 210; *Caldwell v. Parmer*, 56 Ala. 405.

WALKER, J.—B. S. Brown and A. J. Smith were partners, doing business in the town of Ozark, in this State, under the firm name of Brown & Smith. On the 27th day of September, 1889, said Brown, in the name of the firm, sold to Rovelsky a house and lot in the town of Ozark at the price of seven hundred dollars, received five hundred thereof in cash, and signed the firm name to a bond for title purporting to bind A. J. Smith and B. S. Brown under the firm name of "Brown & Smith." Rovelsky was put in possession of the property by Brown, and thereafter tendered the balance due on his purchase, and demanded of the partners a conveyance of title to the property. Smith refused to join in the conveyance. Thereupon Rovelsky filed his bill for the specific enforcement of the contract evidenced by the bond for title. Brown interposed no defense. Smith defended on the ground that the property in question was owned by himself and Brown as joint tenants, or tenants in common, and that the sale by Brown was made without his knowledge or consent, and was repudiated by him, because, in respect to his right and title to his undivided half interest in said real estate, he was in no way bound by the acts of said Brown.

Smith, by the terms of his answer and by the statements in his deposition, assumed the position that the land in question should not be treated as partnership property, but as any other land held by a tenancy in common. The bill avers that Brown and Smith were engaged in buying and selling real estate for speculation and profit, and that they engaged in that business as partners; that they bought and sold real estate as partners under the firm name of Brown & Smith. These averments are sustained by the testimony of Brown, of the complainant and of Barnes, all to the effect, that Brown and Smith were partners in the real estate business, and were engaged in buying and selling lots in and around Ozark, that they treated and rented their property there as firm property, and, prior to the sale now sought to be enforced, each of the partners, in the name of the firm, was trying to make sale of the lot in question for the purpose of paying the debts of the firm. Brown stated, that prior to the purchase of the lots, he

and Smith (the latter did not reside at Ozark) had formed a partnership for the purpose of buying and selling real estate in the town of Ozark, and that it was agreed that Brown should make the purchases; that he did make the purchases and Smith afterwards paid his part of the purchase-money to Brown, and the property was regarded as having been bought with partnership money; and that both members of the firm had the right to bargain for the sale of any of the lots belonging to the firm. Smith alone was examined in his own behalf. He stated that the partnership of Brown & Smith was formed for the purpose of manufacturing brick, that each member was to share equally in the profits and losses; that there was no written contract, or articles of partnership, " that there was no written or verbal contract by said firm or among the members thereof authorizing the firm as such to purchase real estate, or deal in real estate." He further stated that in 1887, Barnes, who then owned the lot in controversy, offered it to him at the price of six hundred dollars, that he then told Brown to purchase it at that price; whereupon Brown approached Barnes and offered to purchase at that price, but Barnes then refused that offer, and proposed to sell at eight hundred dollars; that Brown then closed the trade at the last named price, and took a bond for title in his own name; that thereafter Brown told witness of the purchase, and witness said it was all right, and paid his half of the cash payment to Brown. The witness denied that he ever gave his consent for Brown to sell his half interest in the lot in controversy to Rovelsky, or to any one else; but he did not deny the truth of any of the statements made by the other witnesses, to the effect that the firm of Brown & Smith was, as a matter of fact, engaged in the business of buying and selling real estate in and around Ozark; that they dealt with their property there as firm property, and that each of the partners had been trying to sell the lot in controversy for the purpose of paying the partnership debts. Smith does not intimate that he joined Brown in the purchase of the lot in controversy for any other purpose than in the way of speculation or trading. We are satisfied from the evidence that the lot was bought by Brown and Smith in the course of a general dealing engaged in by them in the business of buying and selling real estate, and that it, like other lots owned by them, was treated and regarded by them, and is to be treated and regarded by the court, as partnership property. So treating it, will the contract made in the name of the firm by Brown alone be specially enforced against Smith ?

The doctrine is familiar and is illustrated by many reported

cases, that when partnership funds have been used in the acquisition of real estate, whether the title be taken in the name of one partner, or in the name of all so as to make them in law tenants in common, such property will for certain purposes be treated in courts of equity as personalty.—*Powers v. Robinson*, 90 Ala 225, and authorities there cited. This doctrine has usually been invoked for the purpose of enforcing the payment of partnership debts, or to secure a proper division of the assets on a settlement of the partnership affairs; and, sometimes, the courts, having in view only these familiar applications of the rule, have spoken of it existing for the two purposes above mentioned. Such statements, on their face, may suggest a doubt as to whether the doctrine can be invoked for any other purpose. In an ordinary trading or commercial partnership, the usual dealings of the concern in the course of its business are with money or other personal property. Real estate does not figure in the regular dealings of such a partnership; but it often happens, that real estate is acquired in the collection of debts, or the funds of the firm may find their way into real estate in other modes. Still real estate does not become the subject matter of the regular business dealings of the firm. It is disposed of, or if it remains on hand, that part of the partnership funds which has been used in its acquisition is thereby practically withdrawn from the business. The real estate is not, in such cases, used for partnership purposes except by selling it and returning the proceeds to the business, there to be used in trade, in paying debts or in a distribution on a settlement of the partnership affairs. If not so voluntarily applied by the partners themselves, courts of equity are not likely to be appealed to in reference to such real estate, as affected by the partnership relation, except to reach it as a depository or hiding place of partnership funds for the purpose of enforcing the payment of debts, or to secure an equalization in divison among partners. The fact that in most of the reported cases the equitable jurisdiction has been invoked only for one or the other, or both of these two special purposes is an explanation of the habit of speaking of the rule as existing for those purposes, without mentioning other purposes which, on consideration, may be found to be equally within the reason of the rule. There are manifest reasons for the existence of this equitable rule of treating partnership real estate as personal property. A general partnership is a scheme of co-ordinate contribution, effort and action by each for all. The property and resources contributed by the several members constitute a fund specially appropriated for use in carrying on the partnership business, for the satisfaction of part-

nership obligations, and for a ratable division of what may be left among the partners. None of these special purposes could be effectually carried out as to real estate, if the incidents of the legal ownership of that kind of property are recognized in the partnership dealings. The powers of the several general partners in the acquisition, management, control and disposition of the partnership property in the course of business, would be impossible of adequate exercise if hampered by the restrictions which at law embarrass the ownership and alienation of real estate. The incidents of dower, heirship, &c., practically preclude, so far as real estate is concerned, a recognition at law of that species of title which the partnership and the several members thereof have in the firm property; for each has the power of absolute disposition within the scope of the business, and in the case of the death of a member, the survivor or survivors are vested with an exclusive title and right of disposition for partnership purposes. It is plain, without further illustration, that in dealing with partnership real estate for partnership purposes, it is impracticable to recognize the incidents of its legal ownership. And it is equally plain, without any illustration at all, that it would be grossly unjust, both in respect to the relations of the partners with each other, and as regards the partnership dealings with others, to allow the investment of partnership funds in real estate to limit or to enlarge the rights and powers of the several partners as to the firm property, or to cut off or restrict the appropriation of the partnership property to the purposes above mentioned to which it has been specially set aside and devoted. Such inequitable results are obviated by treating, so far as necessary to accomplish the purposes of the partnership, such real estate as personal property. And why should not such real estate be treated as personal property when it is the subject matter of the ordinary business of the partnership, as well as when it is sought to be reached to enforce the payment of debts, or to effect a settlement of the partnership affairs? It is a fact, that the buying and selling of real estate is a regular business engaged in throughout the country. Many partnerships are in existence devoted exclusively to the transaction of this kind of business. Real estate is the subject matter of their trading operations. They deal in it as a commodity. It is their stock in trade. The obligations they assume directly affect and involve the title to that character of property. If a debt, contracted in a transaction having no connection with real estate by a member of an ordinary commercial firm acting within the scope of the business, may be enforced against land, merely because partnership funds have

been used in its acquisition, *a fortiori*, the obligation of one member of a real estate partnership undertaken in the regular course of trade in reference to the kind of property which is the special subject matter of their business, should be effectually enforceable against all the partners, and should reach and bind the property dealt in. If the several partners in a firm engaged in the business of buying and selling real estate can not bind the firm by purchases or sales of such property made in the regular course of business, then, they are incapable of exercising the essential rights and powers of general partners, and their association is not really a partnership at all, but a several agency, the acts of each member being subject to ratification or repudiation by the other members, or by their wives, or, if they should die, by their widows, heirs, or devisees. In short, we are unable to discover any satisfactory reason for denying to a court of equity the power to treat real estate as personalty in order to make binding partnership obligations in reference to the particular subject matter of the regular dealings of the firm, when that rule sought to be invoked to this end is readily applied to enforce the payment of ordinary debts, or to secure a partnership division, which, as compared with the immediate and primary aim of carrying on the regular business of the concern, are the secondary and ultimate purposes to which the partnership property has been pledged or devoted. And authorities are not wanting to support the conclusion that the rule is not confined in its application by any such unreasonable distinction. In *Lang's Heir's v. Waring*, 17 Ala. 145, it was said: " So far as the partners and their creditors are concerned, real estate belonging to the partnership is in equity treated as mere personalty; and so it will be deemed as to all other intents, if the partners have by agreement or otherwise impressed upon it that character." In a suit to recover commissions for finding a purchaser of real estate, brought by a man who had been employed by one member of a firm to sell the partnership land, it was said: "There is no doubt that a co-partnership may exist in the purchase and sale of real property, equally as in any other lawful business. Nor is there any doubt that each member of such co-partnership possesses full authority to contract for the sale or other disposition of its entire property, though for technical reasons, the legal title vested in all the co-partners can only be transferred by their joint act:"—*Thompson v. Bowman*, 6 Wall. 316. One member of a parnership engaged in the business of buying and selling real estate, fraudulently, and without the knowledge of his co-partners, represented to a purchaser, that the partnership land which was the subject of the

sale was oil-producing. In an action for damages for the fraud and deceit, it was held that both partners were liable. In the course of the opinion, the court says : "When the partnership business is to deal in real estate, one partner has ample power, as general agent of the firm, to enter into an executory contract for the sale of real estate."—*Chester v. Dickinson*, 54 N. Y. 1 ; 13 Amer. Rep. 550. "When real estate is brought into the partnership business, it is treated, in equity,, as personal estate, and a lease of it by one partner is as much a partnership transaction as a sale of partnership goods by him would be."—*Moderwell v. Mullison*, 21 Pa. St. 257. When land is purchased to be dealt in as a commodity, this would seem to be, for the purposes of such dealing, an out and out conversion of it into personalty, and each partner can bind the firm by contracts for its disposition.—*Ludlow v. Cooper*,. 4 Ohio St. 1 ; *Olcott v. Wing*, 4 McLean, 15 ; *Pugh v. Currie*, 5 Ala. 446 ; *Frost v. Wolf*, 77 Texas, 455 ; 1 Bates on Partnership, §§ 298–299. Our conclusion is, that partnership real estate is, in equity and for partnership purposes, to be treated as personalty ; and that one member of a partnership, engaged in the business of buying and selling real estate, can bind the firm by contract in the firm name for the sale of partnership land, and that such contract should be specially enforced against all the partners. This conclusion does not involve a disregard of the rule laid down in *Lang's Heirs v. Waring*, 25 Ala. 640; for the conversion into personalty is only so far as may be called for to effectuate the purposes of the partnership; and when the partnership has come to an end, and its purposes have been fully accomplished, the real estate resumes its legal characteristics.

The acts of the defendant Smith indicate that when he learned of the sale made by Brown at first he treated it as binding on him; for it was stated by two witnesses, who are not contradicted, that his demand on Rovelsky was, not for a rescission or a non-assertion of the contract as against him, but for a transfer of the title bond to him or to his friend Baldwin. Smith himself says he offered to repay the five hundred dollars to Rovelsky, thereby implying that such repayment was necessary to get rid of the effect of Brown's act. This conduct might, without relying on the consideration stated above, be regarded as having the effect of making the contract of sale binding on him; for if Smith, in his dealings with Rovelsky, treated the sale made in the firm name by Brown as having such effect that a transfer of the title bond to Baldwin would confer upon him a valid claim to the property, that, perhaps, amounted to such a subsequent parol ratification

[Rovelsky v. Brown & Smith.]

fication of Brown's act as to supply his original want of authority to make the sale.—*Herbert v. Hanrick*, 16 Ala. 581; *Grady v. Robinson*, 28 Ala. 289; *Gunter v. Williams*, 40 Ala. 561; and if a ratification was once made, it was irrevocable.— *Whitfield v. Riddle*, 78 Ala. 99; *Andrews v. Ins. Co.*, 92 N. Y. 596. In view, however, of the assertions made by Smith, as soon as he heard of the sale, that he had a half interest in the property, and that the sale by Brown was without his knowledge or consent, we prefer not to rely upon a ratification evidenced by conduct of an equivocal nature, but base out conclusions upon the considerations above set forth. Still, the evidence as to Smith's conduct in his dealings with Rovelsky is significant as indicating that he was under the impression that one partner did have the right to bind the firm by such a contract as Brown had entered into; and that in enforcing the contract the court is not recognizing an obligation which was not supposed to exist.

In copying the depositions of B. S. Brown, D. Rovelsky and Jesse W. Barnes into the transcript, the register has written out in the form of continuous paragraphs the interrogatories, or parts thereof, and the answers, or parts thereof, without numbering or otherwise separating or identifying the interrogatories or the answers. This mode of copying depositions is unnecessarily confusing. To comply with Rule 25 of the Rules of Practice in this court, Code of 1886, p. 803, the interrogatories and the answers thereto, which should immediately follow in the copy, ought to be plainly separated and identified. No costs will be taxed to the register for copying into the transcript the depositions of the three witnesses above named.

The decree of the Chancery Court is reversed, and a decree will be here rendered for the specific enforcement of the contract of sale. Appellee Smith to pay the costs in this court, and in the chancery court.

Reversed and rendered.