(92 South. 848)

#### GIDDENS et al. v. REDDOCH et al.

#### BANK OF LUVERNE v. SAME.

#### (4 Div. 874, 880.)

(Supreme Court of Alabama. Oct. 27, 1921. Rehearing Denied April 13, 1922.)

1. **Tenancy in common ⬄3—Lands descending by will or law from deceased partners vest takers as tenants in common.**

Where lands were conveyed to a partnership, the legatees or devisees of one of deceased partners and the next of kin and distributees of the other took the land as tenants in common.

2. **Partnership ⬄246 — Lands descending by will or law, where no creditors shown, realty.**

Where lands descended to the legatees or devisees of one of deceased members of a partnership and the next of kin and distributees of the other, and there were no creditors shown, the land was realty, and not personalty.

3. **Tenancy in common ⬄46 — Mortgage by tenant in common of whole estate affects only mortgagor's interest.**

A conveyance or mortgage executed by a tenant in common on the whole estate only operates to transmit or subject the grantor's or mortgagor's interest in the subject of the tenancy.

4. **Tenancy in common ⬄46—Interest of cotenants in common of land cannot be subordinated to interest of mortgagors of whole estate.**

Where a mortgage was executed by a partnership on lands held by the members of the firm as tenants in common with cotenants, the interest of the cotenants could not be subordinated to the interest of the partners to the appropriation of the lands to a mortgage given by them.

Appeal from Circuit Court, Crenshaw County; A. E. Gamble, Judge.

Original bill by Lena Giddens and another against J. Claude Reddoch, the Winter-Loeb Grocery Company, and others for the sale of land for division among joint owners, with cross-bill by the Bank of Luverne to subject the interest of complainant to a mortgage held by the Bank. From the decree rendered, complainants appeal, and the Bank of Luverne files a cross-appeal. Reversed and remanded, with directions.

John R. Tyson, of Montgomery, for appellants Lena Giddens and another.

In his original brief counsel discusses the issues involved, but without citation of authority. In his reply brief he insists that both the Reddochs had died more than 8 years prior to the execution of the mortgage to the Bank of Luverne and 13 years before filing of this bill, and that therefore the presumption obtains that all debts owing by the partnership were either paid, abandoned, or barred. 68 Ala. 210. Neither of the surviving partners could revive or continue in force, as against the heirs at law or legatees any of the debts of the partnership. 76 Ala. 501. No estoppel arises in favor of the Bank of Luverne as against either complainant, and in any event no estoppel is pleaded, and hence is not available. 130 Ala. 269, 30 South. 564; 187 Ala. 237, 65 South. 792; 173 Ala. 46, 55 South. 536; 159 Ala. 656, 49 South. 71; 158 Ala. 626, 48 South. 377; 155 Ala. 648, 47 South. 82; 169 Ala. 606, 53 South. 812.

---

⬄For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Frank B. Bricken, of Luverne, and Powell & Hamilton, of Greenville, for cross-appellant.

The Bank of Luverne had a mortgage lien on the two storehouses and lots described in the bill; also in decree that the complainant's interest had not been divested by adverse possession; also in sustaining the demurrer to the paragraphs 6, 7, and 9 of the cross-bill. 2 How. 203, 11 L. Ed. 236; 30 Cyc. 636; 79 Ala. 540; 103 U. S. 613, 26 L. Ed. 585; 122 Ala. 602, 26 South. 139, 82 Am. St. Rep. 103; 130 Ala. 502, 30 South. 517; 155 N. Y. 356, 49 N. E. 929, 63 Am. St. Rep. 675. In the settlement of partnership the real estate is considered in equity as personal property for the payment of debts, or for an adjustment or settlement between the partners. 82 Ala. 200, 2 South. 897; 92 Ala. 522, 9 South. 182, 25 Am. St. Rep. 83; 21 Ala. 42. The complainants are estopped from setting up any claim to the property until the debts of the partnership are paid. 107 Ala. 595, 19 South. 56; 129 Ala. 376, 29 South. 797.

Steiner, Crum & Weil, of Montgomery, for appellee Winter-Loeb Gro. Co.

Mortgage of Winter-Loeb Grocery Company is a valid lien, superior to all the heirs' and devisees' rights. 103 U. S. 613, 26 L. Ed. 585; 155 N. Y. 356, 49 N. E. 929, 63 Am. St. Rep. 681; 26 N. E. 1095; 31 N. E. 918; 120 Ala. 128, 26 South. 494; 121 Ala. 267, 26 South. 31; 79 Ala. 540.

McCLELLAN, J. The original bill sought the sale for division of certain town property in Luverne and 50 acres of farm land. The more material questions result from the cross-bill of the Bank of Luverne, a mortgagee, the contention being, in effect, that original complainants (appellants on main appeal) and others to be indicated were not entitled to an interest in the land, or that their rights were subordinate to those of the bank as mortgagee. This property was acquired, originally, by a partnership called Reddoch Bros., operating a mercantile business in Luverne. It was conveyed to the partnership so named. The members of this firm were C. E. and R. G. Reddoch. The father of these men died in 1901. Surviving him were his widow, Mrs. L. M. Reddoch (appellant) and seven children, viz. C. E., R. G., J. H., I. R., J. D., J. C., and Lena Reddoch, the latter the appellant Mrs. Giddens. Supplemented by small funds of their own, C. E. and R. G. Reddoch established the partnership of Reddoch Bros. through funds derived from their father's estate and insurance on his life, no settlement or division of which appears to have been made among those entitled thereto, except that to the widow was some time later conveyed the "home place farm," after which she was credited at the store of the firm with the annual rents from that if not from other lands formerly owned by the father.

C. E. Reddoch died in 1904. In his will, which was duly probated with R. G. Reddoch as executor, he provided:

"It is my will that my interest in the business of Reddoch Bros. may be retained in the business for such time as may be agreed on between my surviving partner, R. G. Reddoch, and the heirs above mentioned as they respectively become of age."

The heirs alluded to in his will were his brothers and sister. His mother, Mrs. L. M. Reddoch (appellant), was not mentioned in his will, and hence took nothing under his will. In 1905 R. G. Reddoch died, having taken no affirmative steps in respect of the agreement contemplated by the will of his testator, his deceased partner, nor engaged in any effort to segregate and distribute his brother's interest in the firm. According to the evidence, there was no effectual compliance with the quoted direction of the will. All that R. G. Reddoch did was promptly to take in as a partner his brother J. H. Reddoch, and to continue the business in the firm name of Reddoch Bros. However, the omission, if such it was, to meet the will's condition for the retention of C. E. Reddoch's interest in the original firm, is unimportant, since the death of R. G. Reddoch completely dissolved the original partnership and rendered impossible the observance of C. E. Reddoch's desire that the business continue with R. G. Reddoch, his designated surviving partner, a member. And it may be that the result of R. G. Reddoch's introduction of J. H. Reddoch into the firm—though J. H. Reddoch paid nothing for a partner's interest therein—was to evince the surviving partner's election not to favor or follow the direction of his brother's will. In any event, the death of R. G. Reddoch in 1905 dissolved the partnership and interposed these complications: An unsettled partnership in which C. E. and R. G. Reddoch had been partners; the administration of the two estates of C. E. and R. G. Reddoch, the latter leaving no will, thereby admitting, differently from C. E., the mother, Mrs. L. M. Reddoch, as a beneficiary under the statutes of descent and distribution; and vacating R. G. Reddoch's wholly unexecuted executorship of C. E. Reddoch's estate as well as terminating R. G. Reddoch's erstwhile function as a surviving partner of the original firm.

On April 26, 1906, J. H. Reddoch was appointed administrator with the will annexed of C. E. Reddoch's estate. In 1905 J. H. Reddoch was appointed administrator of the estate of R. G. Reddoch, deceased. In the estate of the former, C. E. Reddoch, the administrator with the will annexed took no action. In the estate of the latter, R. G. Reddoch, he went through the form of a

settlement, after reporting the debts paid, unto a decree in which the respective shares of each of the heirs at law and distributees were ascertained and determined by the probate court, and took from each a receipt in full therefor, though it is undisputedly shown that no sale of property of the estate was effected converting the estate into money as the receipts recite was done, and no money was in fact then paid to any of the distributees of the estate of R. G. Reddoch, deceased. Under the apt authority of Vincent v. Martin, 79 Ala. 540, this effort at a final settlement by J. H. Reddoch as administrator of the estate of R. G. Reddoch, deceased, was void. However, at a later stage of the opinion account will be taken of this "settlement" for its bearing upon an issue of law upon which the cross-appellant, Bank of Luverne, relied for protection or relief.

Immediately after the death of R. G. Reddoch, I. R. Reddoch became a member of the firm still called Reddoch Bros., entering it on the invitation of J. H. Reddoch and paying nothing, as did J. H. Reddoch when on R. G. Reddoch's invitation he became a partner on the decease of C. E. Reddoch, paying nothing for an interest or share in the business. The firm of Reddoch Bros., composed of J. H. and I. R. Reddoch, pursued the like business until 1913, collecting and appropriating to the firm's interest the insurance on goods and buildings burned in 1906-07, the insurance on R. G. Reddoch's life, and probably the proceeds of the sale of some land the original firm had acquired before the death of C. E. Reddoch, at no time accounting to the mother, other brothers, and sister for whatever interest they had in the corpus of the firm property or in the life or property insurance collected or in the proceeds of the sale of land sold by the firm when composed of J. H. and I. R. Reddoch, unless some character of such accounting was afforded by the "final settlement" of R. G. Reddoch's estate by J. H. Reddoch, administrator, to which we have already referred, and that will now be stated.

On November 9, 1906, J. H. Reddoch, as administrator of the estate of R. G. Reddoch, deceased, filed his "full inventory" of the assets, real and personal, of the estate of his intestate. The inventory defined R. G. Reddoch's interest in all property, real and personal, as being seven-twelfths, including, as we understand the descriptions, the real estate involved in this litigation. The proportional statement in the inventory proceeded upon the theory that R. G. Reddoch held an undivided one-half interest, with the late C. E. Reddoch, in the original firm, and under C. E. Reddoch's will had acquired a one-sixth interest in C. E. Reddoch's half interest in the properties of the original firm, and that the remaining five-twelfths interest in the properties, real and personal, listed on the inventory, was respectively held by the surviving brothers and sister, now Mrs. Giddens; and yet the latterly rendered probate decree before mentioned concluded in the mother's favor (Mrs. L. M. Reddoch) for one-half of the "money" into which, it was avowed, the estate of R. G. Reddoch had been converted. Recurring to the recitals of the inventory, the order of the probate court appointing appraisers of the property of the estate of R. G. Reddoch, deceased, produced an appraisal consistent with the terms of the inventory, and it was so approved. It is manifest from the probate court record of the administration of the estate of R. G. Reddoch, deceased, that no subsequent creditor or mortgagee of real property mentioned in the proceeding could thereby or therefrom acquire a status of purchaser or successor in right that was inconsistent with the existence in 1906 of the fact that there was outstanding in others than J. H. and I. R. Reddoch, composing in 1908 and afterwards the firm of Reddoch Bros., almost a moiety interest in the real estate noted in the inventory and appraisement. Any one consulting the probate record of that estate's administration would have been so advised. The receipts from R. G. Reddoch's next of kin and distributees were likewise impotent, since: (a) Their recitals were not literally true, no money having been paid; and (b) they but token a reception of the money equivalent or share in the estate of R. G. Reddoch, deceased, which, the indicated probate record asserts, was only an undivided seven-twelfths of the properties, real and personal, listed on the inventory. So this matter of asserted satisfaction of these parties through or in consequence of those probate proceedings in the administration of R. G. Reddoch's estate must be laid out of the cause, the evidence otherwise not sustaining the insistence of the Bank of Luverne that the interests of the heirs at law and distributees of R. G. Reddoch, deceased, in his estate or in the properties, real and personal, of the original firm, were paid for by credits or advancements from the firm of Reddoch Bros. when composed of J. H. and I. R. Reddoch. The failure to better sustain the bank's insistence in this regard may be due to the absence of the books of the firm anterior to 1908; but this possibility, this absence of evidence, does not justify a different conclusion on the present phase of the cause.

Through its cross-bill the Bank of Luverne contends that the heirs at law and distributees of the deceased Reddochs are concluded by adverse possession of the land in question by Reddoch Bros., as composed of J. H. and I. R. Reddoch, or are postponed in respect of right or interest precedent to the bank's right to have its mortgage debt satisfied out of the land described in its cross-bill and mortgage; that, because of conduct

or acquiescence to be stated, such heirs at law and next of kin to the deceased Reddochs are due to be subordinated in right or interest to the superior equity of the bank under its mortgage executed in 1913 on real property that was owned as partnership property by the original firm of Reddoch Bros. when composed of C. E. and R. G. Reddoch. The status of the Bank of Luverne as a creditor of Reddoch Bros. was this: It took the mortgage in question in 1913 to secure money then advanced and an elder indebtedness the time of prior accrual of which is not shown. The mortgage was signed in the firm name and also by the firm's members, J. H. and I. R. Reddoch and their wives. It covered, among other things, the real estate involved in this cause, such real estate having been partnership property of the original Reddoch Bros., when that firm was composed of C. E. and R. G. Reddoch, both of whom died prior to 1906. The bank is not a creditor of the original firm. It has taken security for an indebtedness contracted by the firm as last membered. It is not contended that the original firm, or the estates of its members, or those succeeding thereto under the will of C. E. Reddoch or under the statutes of descent and distribution as applied to R. G. Reddoch's estate, are liable for this indebtedness to the Bank of Luverne. To the contrary, the bank's insistence is that the property in question has become subjected to a liability in its behalf in consequence of acts of the parties who, at an earlier time prior to the interposition of the bank's rights, might have enjoyed their original interests in virtue of the will of C. E. Reddoch, deceased, or under the statutes of descent and distribution, in the estate of R. G. Reddoch, deceased. The substance of the bank's contention in this regard restricts the issue, and we so restrict its reconsideration on this appeal.

[1, 2] Aside from J. H. and I. R. Reddoch, none of the Reddoch family were members of the partnership of Reddoch Bros. after dissolution by death (in 1905) of the original firm. Upon the death of R. G. Reddoch, original partner who survived his associate, C. E. Reddoch, only a short time, the legatees or devisees in C. E. Reddoch's will and the next of kin and distributees of 'R. G. Reddoch, deceased, were tenants in common in the real property owned by the deceased Reddochs. No then existing creditors being shown, the land they owned was not personalty; it was realty, subject to the law applicable to that character of property. Butts v. Cooper, 152 Ala. 382, 44 South. 616; Powers v. Robinson, 90 Ala. 225, 8 South. 10; Rice v. Bank, 100 Ala. 617, 13 South. 659.

The relation of tenancy in common in the partnership land having resulted from the deaths of C. E. and R. G. Reddoch in 1904–05, it will suffice to say, under familiar principles, that the evidence does not show that adverse possession of this real property (as between tenants in common) characterized the holding thereof by J. H. and I. R. Reddoch, or either of them, or by the subsequent firm of which they were the constituents. None of the Reddochs have been divested of the unqualified title to the real property in question that was in them, as tenants in common, in 1905–06. Have these joint owners since then become estopped to assert their title to this real property as against mortgages thereon subsequently given by members of Reddoch Bros. when composed of J. H. and I. R. Reddoch for debts contracted from three to eight years after the dissolution (by deaths) of the original firm? That these mortgages subjected the titles of J. H. and I. R. Reddoch in these real properties to the security they intended is, of course, evident; but these mortgages, in and of themselves, only conveyed or subjected the interests or titles of J. H. and I. R. Reddoch, is equally clear.

[3] A conveyance or mortgage executed by a tenant in common on the whole estate only operates to transmit or subject the grantor's or mortgagor's interest in the subject of the tenancy. 7 R. C. L. p. 885; Coleman v. Stewart, 170 Ala. 255, 53 South. 1020.

[4] The mortgages themselves—executed by J. H. and I. R. Reddoch to secure their debts or debts incurred by the firm as they alone constituted it—having wrought no divestiture of the title of their cotenants or imposed liens upon their interests in the real property, it remains to respond to the Bank of Luverne's contention that the cotenants of J. H. and I. R. Reddoch so acquiesced in the possession, use, and ostensible handling of this real property as the property of the firm of Reddoch Bros., when latterly composed of J. H. and I. R. Reddoch only, as to subject and postpone their interests therein to the satisfaction of mortgages that were subsequently given to secure debts of the firm of Reddoch Bros., constituted alone of J. H. and I. R. Reddoch. The relation of these parties being that of tenancy in common in this real property, inceptive at least as far back as 1905 (no rights of then existing creditors of the original firm intervening), and no adverse possession of the real property (as between tenants in common) being shown, this contention of the Bank of Luverne, as a mortgagee (in 1913) of the firm composed alone of J. H. and I. R. Reddoch, is not well founded. To subordinate the interest of other cotenants of real estate to the conveyance or mortgage of the cotenant executing the instrument is, in essence, the recognition of a character of right in the grantor or mortgagor (cotenant), a power or authority, inconsistent with the obligations of the relation, and would, if sanctioned, introduce a principle of prejudice that has not, so far

as we are now advised, been stated or illustrated in the books. Unless effective adverse possession of the subject of the tenancy by one cotenant against his cotenants is exerted in the sense of the law governing the relation, the unqualified right of the other cotenants to retain their interests unimpaired and unsubordinated by the acts of their fellow tenant is not questionable. Did the cotenants themselves qualify or subordinate their interests in the real property so held to the security of the mortgages of the firm newly formed after their interests as cotenants had become fully vested, unqualified by any existing creditor of the original firm that was completely dissolved in 1905, years before the mortgage to the bank was executed? The evidence shows, at most, inaction on the part of the other (than J. H. and I. R. Reddoch) cotenants in respect of the real property in question in having their interests reduced to their separate enjoyment. They were simply quiescent. They did no act, made no assertion, responded to no inquiry, were not silent when good faith required answer, calculated or designed to invite the extension of credit to J. H. and I. R. Reddoch, or to the firm they alone composed, on the notion that that firm owned the entire estate in this real property. It may well be that they regarded and referred the possession, use, and handling of this real property by J. H. and I. R. Reddoch, constituting the mercantile firm of Reddoch Bros., mortgagors to the Bank of Luverne, to their relation as cotenants with them in the real property. The community of interest that the evidence shows existed in the Reddoch family contributes to invite that conclusion. That there was no disposition to prejudice or impair the interest of any member of the family at any time in any way is made manifest by the testimony. The real estate in question was enjoyed by the new firm of Reddoch Bros., composed of J. H. and I. R., fellow tenants of those likewise invested with interests in it, in a manner not inconsistent with the obligations of the relation of cotenancy. That the taxes on the land were assessed to and paid by the firm as then constituted of cotenants with the other heirs of the deceased Reddochs did not impair, subordinate, or forfeit the rights of the cotenants who did not assess or pay taxes thereon. That J. H. and I. R. Reddoch, or the firm they constituted, "claimed" this real property, did not evince an assertion of proprietorship hostile to their cotenants; and the evidence is conclusive that none of their cotenants were ever informed in any way that J. H. and I. R., personally or as a firm, claimed this real estate to the exclusion of their cotenants. It does not appear from the evidence that the cotenants of J. H. and I. R. knew of the mortgaging of the real estate or that any one intended extending them credit on the idea that these two alone owned the fee in the real property. We find nothing in the record invoking or justifying the application of the doctrine of estoppel, to the end of subordinating the interests of the cotenants of J. H. and I. R. Reddoch to the appropriation of the real property to the mortgages given by them. The argument to the contrary of this conclusion is based, chiefly, upon the interesting and instructive opinion of Justice Bradley in Hoyt v. Sprague, 103 U. S. 613, 26 L. Ed. 585, coming up from Rhode Island, where the partnership was domiciled and its properties situate, with the complaining minors resident of New York; their property guardian being appointed by and residing in the state of Rhode Island. A later appeal of that controversy is reported in Francklyn v. Sprague, 121 U. S. 215, 7 Sup. Ct. 951, 30 L. Ed. 936. Both of these deliverances have been carefully considered. As appears from the opinions, the learned court there wrote with particular reference to the facts before it. The facts and circumstances there presented distinguished that litigation from this and render the intermediary as well as final conclusions there given effect uninfluential on this review. A primary discriminating factor present in the Sprague Case and absent here is that the Sprague partnership was a continuing concern, directed to the same enterprise throughout, from the death in 1843 of Amasa Sprague, an original partner, until 1858, when his surviving partner, William Sprague, died; whereas in the cause under this review the original partnership was wholly dissolved in 1905 by the deaths of C. E. and R. G. Reddoch, the sole partners composing the original firm, thereupon at once constituting those entitled thereto tenants in common in the real estate belonging to that firm, no rights of creditors of that firm intervening to create an equity for their satisfaction out of the real property owned by that partnership. No such factor of complete dissolution of the original partnership was considered, if indeed it was presented, in the Sprague Case—a factor that cannot be minimized in its important effect by the organization of the new, different firm of Reddoch Bros., constituted alone of J. H. and I. R. Reddoch (Lee v. Wimberly, 102 Ala. 539, 550, 15 South. 444), the entry (previous to R. G. Reddoch's death) of J. H. Reddoch on the invitation of R. G. Reddoch being but in the character of a volunteer, so far as his brothers and sister were concerned, investing him with no right in the real properties superior to that of his brothers and sister, to which fact he gave unmistakable recognition in his acts as administrator in the probate court's administration of R. G. Reddoch's estate. Under the

rules of law in force in Alabama—they may have been different in Rhode Island in 1843 to 1865—governing the powers of administrators and guardians in respect of estates committed to them, this court is not now prepared to affirm—it is unnecessary now to deny it—that an administrator of an estate or a guardian of minors has authority to continue the properties of his estate or ward in a partnership that is at most but the successor of the partnership (dissolved by death of all its members) in which the administrator's intestate was a partner, or from which the guardian's ward derived the interest it is the duty of the guardian to preserve and protect. See Steele v. Steele, 64 Ala. 438, 455, 38 Am. Rep. 15; Camp v. Dill, 27 Ala. 553, 560; St. Joseph, etc., v. Augustini, 55 Ala. 493.

It results from these considerations and conclusions that the decree—a judicial entity —is affected with error in respect of the issues of fact and law raised by the amended original bill, the answers thereto, the amended cross-bill of the Bank of Luverne, and the answers thereto. The decree is reversed. The cause is remanded for the rendition and execution by the court below of a decree ascertaining, from the evidence now on file in the cause, and declaring the respective shares or interests of the respective tenants in common in the real estate owned by the original firm of Reddoch Bros., composed of C. E. and R. G. Reddoch, at the date of the death of R. G. Reddoch, declaring the undivided shares or interests only of J. H. Reddoch and I. R. Reddoch subject to their mortgage indebtedness, first, to Winter-Loeb Grocery Company, and second, to the Bank of Luverne, and ascertaining the amount of such indebtedness with accrued interest, according priority to the mortgage indebtedness to Winter-Loeb Grocery Company, directing and effecting the sale for division, under chancery practices, of the real estate in which the surviving Reddochs were and are tenants in common, and impounding and applying the net shares in the sale's proceeds of J. H. and I. R. Reddoch to the satisfaction, as far as such shares of the proceeds will do so, first of the Winter-Loeb Grocery Company mortgage indebtedness and interest, and, second, of the Bank of Luverne mortgage indebtedness and interest, paying any balance to J. H. and I. R. Reddoch in equal proportions after the costs in the cause, including duly ascertained solicitors' fees are first paid from the total proceeds produced by he sale for division, and decreeing in any other matter of related detail to effect complete relief in accordance with the major premises of the directions herein given.

Reversed and remanded, with directions.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.

## On Rehearing.

McCLELLAN, J. The argument first filed in support of the application for rehearing is substantially the same as that presented on original submission.

Adams v. Albert, 155 N. Y. 356, 49 N. E. 929, 63 Am. St. Rep. 675, 681, cited on the brief supporting the application for rehearing, was consulted in the course of the consideration of the appeals on submission. The doctrine there announced that a retiring partner is concluded and his interest is subordinated by his act in leaving property to which he was entitled in the continuing operations of the firm from which he had retired is not applicable to the circumstances presented in this cause; so for the reason that here the deaths of both the original partners completely dissolved the original firm, and, in the absence of then existing creditors, invested the surviving brothers, sister, and mother (in proper proportions) with the title and relation of tenants in common in the real estate that theretofore had belonged to the original partners. If the circumstance had been one of retirement of a partner, leaving his property or interest in the continuing firm, as was the very different case in Adams v. Albert, supra, the doctrine of that decision and of Parson on Partnerships (3d Ed.) 537, might have been invoked.

The deliverance in Hoyt v. Sprague, 103 U. S. 613, 26 L. Ed. 585, was considered and discriminated in the original opinion. That controversy was again before the court in Francklyn v. Sprague, 121 U. S. 215, 7 Sup. Ct. 951, 30 L. Ed. 936. After reconsideration of these cases the court remains convinced that the discriminative observations made with respect to those decisions were well founded.

In a supplemental brief subsequently filed in support of the application for rehearing, it is insisted that effect should be accorded the doctrine that, upon proper occasion, equity will treat partnership real estate as personal property. That doctrine's design is to protect and favor creditors of the partnership. Williams v. Wilson, 205 Ala. 119, 121, 87 South. 549; Butts v. Cooper, 152 Ala. 375, 382, 44 South. 616; Rovelsky v. Brown, 92 Ala. 522, 9 South. 182, 25 Am. St. Rep. 83. It does not appear from the record under review that the original firm of Reddoch Bros. had any creditors at the time the partnership was dissolved by the death of R. G. Reddoch in 1905. The creditors now contesting the right or title to the real estate are creditors of the new firm as composed of J. H. and I. R. Reddoch—creditors that became such long after the dissolution of the original firm composed of C. E. and R. G. Reddoch. The doctrine pressed in the supplemental brief is not available or applicable.

In respect of the citation of Goetter-Weil

& Co. v. Norman, 107 Ala. 585, 595, 596, 19 South. 56, considering a bill to set aside a conveyance for fraud, it will suffice, in discriminating that decision from the cause now under consideration, to observe that the facts of the case, the acts of the parties held to have been concluded by estoppel, are materially different. In the present instance the evidence discloses no such adequately advised "assent" or course of conduct indicative of conscious surrender of known right and title as was shown in the Goetter-Weil v. Norman Case, supra.

Upon reconsideration the conclusions of fact set down in the original opinion (ante) are adhered to. The application for rehearing is denied.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.