**HURST et al. v. SMITH et al.**

**8 Div. 522.**

Supreme Court of Alabama.

Nov. 23, 1933.

Rehearing Denied Jan. 18, 1934.

J. Foy Guin and Key & Key, all of Russellville, for appellants.

Wm. L. Chenault, of Russellville, for appellees.

FOSTER, Justice.

In 1905, the partnership of J. G. Smith & Sons was formed to conduct a mercantile business. It was composed of J. G. Smith and two of his sons J. S. (Jack) and J. W. (Wheeler) Smith.

In 1907, the partnership purchased an unimproved lot, and the deed was made in the name of the partnership as the grantee. It thereupon erected two concrete storehouses and one barn on the lot. The partnership took possession of the buildings and property, and used them for partnership purposes. It so continued until 1916, when J. G. Smith died, and left surviving a widow and seven children, all of full age and still alive except one, Wade Smith, who is now dead, leaving six children all of age, except one. After the partnership was dissolved by the death of J. G. Smith, it was continued under the same name with the partnership property, by the surviving partners, J. S. (Jack) and J. W. (Wheeler) Smith. All the old partnership debts were paid in the ordinary course of the business and out of its operations. It continued to exist in the same place and in the same name, using the storehouses here in controversy, without let or hindrance until 1928, when the partnership and J. S. and J. W. Smith were adjudged bankrupts. In that proceeding it was sought to include the widow, Mattie C. Smith, as a partner, but, upon her denial of such relationship, she was dropped from the proceeding. The testimony is that, after the death of J. G. Smith, the firm was composed of J. S. and J. W. Smith, who were the surviving partners. The lot and buildings were sold by the bankrupt court as the property of the partnership, and J. S. and J. W. Smith, as its partners. Appellants claim under that sale, and have had possession since then, about October, 1929.

At the time of the death of J. G. Smith, the firm owed $6,000 to $8,000, and the assets were worth approximately about as much as the amount of the debts. J. S. and J. W. Smith took the personal assets of the old firm and paid its debts out of merchandise sales, and continued in business, also using the store property until 1928, when they were adjudged bankrupts. They deny that the widow or heirs of J. G. Smith had any interest in the continued business of J. G. Smith & Sons. Neither the widow nor other heirs protested the arrangement; whether they knew of the exclusive claim of J. S. and J. W. Smith to the business is not shown. The real estate was thus continuously used by them in the operation of the business thus continued, and was listed in bankruptcy as theirs. The property was sold in bankruptcy as though exclusively so owned. Except by including the property as their own in the bankrupt schedules, J. S. and J. W. Smith are not shown to have set up any claim to the real property to the exclusion of the other heirs of J. G. Smith.

The bill was filed by the heirs of J. G. Smith, except J. S. and J. W. Smith (whose interest had vested in respondents) to sell the houses and lots for division. The decree granted relief upon the theory that the property was owned by J. G., J. S., and J. W. Smith at the death of J. G. Smith, whose one-third interest descended to his seven children, each taking a one twenty-first, and that respondents succeeded to the interest of J. S. and J. W. Smith which consisted of a one-third each, acquired by the original purchase, and a one-seventh of a one-third each, acquired by inheritance from J. G. Smith; in all eight twenty-firsts each, or a total of sixteen twenty-firsts as the share of respondents, and five twenty-firsts for complainants, and that

the right of the widow to dower was barred by limitations. The respondents are appealing, and complain that the property should be treated in equity as that of J. S. and J. W. Smith, or the partnership of J. G. Smith & Sons, as constituted when the bankrupt sale to respondents was made, and that the entire right and title passed to them by virtue of the bankrupt sale.

The only theory on which it may be held that the title in equity or at law passed at the bankrupt sale is either (1) that it was thus sold to pay old debts of the firm made before the death of J. G. Smith, or (2) that the heirs and distributees of J. G. Smith became partners in the firm after his death, and thereby this real estate became subject to its debts thereafter created, or (3) the real estate and all other assets of the old firm were taken over by the surviving partners with the consent of the heirs and distributees to compensate them for paying and assuming such debts, or (4) adverse possession, or (5) estoppel.

1. We have said that all the debts of the firm owing when J. G. Smith died in 1916 were paid out of merchandise sales before 1920. So that there was no equitable right in respect to them at the time of the bankrupt sale.

■ 2. Regarding the second theory above, there is no evidence on which to base a finding in favor of appellants. But in this respect the situation is very much the same as in the case of Giddens v. Reddoch, 207 Ala. 297, 92 So. 848, 25 A. L. R. 381. As in that case, so in this, the survivors did not claim that the heirs continued as partners, but claimed the business personally, though without any agreement to that effect. There is no evidence that the heirs acquiesced in a claim that they were or became interested as partners, or asserted an interest in any of the property real or personal. They had no benefits from the business, except that which incidentally resulted from the removal of the equitable right of existing creditors to subject the realty bought with partnership funds. They took nothing out of the business and put nothing new into it. The distinction is clear, therefore, between this case and Francklyn v. Sprague, 121 U. S. 215, 7 S. Ct. 951, 30 L. Ed. 936; Hoyt v. Sprague (Francklyn v. Sprague), 103 U. S. 613, 26 L. Ed. 585. In those cases, after the death of the partner, in fact of both of the original partners, their representatives, heirs, and distributees consented to the continued operation of the business on their respective account. By such consent they became partners in a new firm, and all the old assets, real and personal property, became subject to debts thereafter incurred.

While all the heirs and distributees of J. G. Smith were capable of consenting to the continued existence of the firm of J. G. Smith & Sons in such manner as to make them partners, and so that the real estate whose title then stood in the name of the old partnership would thereby have been subject in equity or in bankruptcy to its debts, though contracted after the death of J. G. Smith, there is no such consent shown expressly or impliedly. Thereafter J. S. and J. W. Smith made no such claim in which they acquiesced. The heirs asserted no claim of an interest at any time. When the widow was named as a party in bankruptcy, she was eliminated on her denial. The others were not named as such. When the debts of the old firm were paid, the real estate was relieved of the equitable burden it bore, in the absence of such continued existence of the partnership with the heirs as members.

■ 3. There is no evidence which tends to show that the surviving partners took over the real estate in consideration of the assumption by them of the debts of the old firm; as was done in the case of Dyer v. Morse, 10 Wash. 492, 39 P. 138, 28 L. R. A. 89, cited by appellants. The real estate was not in fact so appropriated, but such debts were paid from the proceeds of merchandise sales in the regular course of the business. Since the business continued for approximately eight years thereafter, it is fair to assume it was or became solvent by such operations, for at least an appreciable time.

It would not be fair to the heirs for these two brothers to conduct that business as their own through a period of evident prosperity, and then after many years it goes into insolvency, and hold the other heirs of the estate as indirectly responsible for the debts lately incurred. To subject their property to such debts would have that effect.

There was much discussion of the general subject in Giddens v. Reddoch, supra, which is applicable to the facts of this case, not necessary to repeat.

■ 4. In respect to the acquisition of title by adverse possession, we also refer to the case of Giddens v. Reddoch, supra, as a parallel situation. When J. G. Smith died, his heirs were tenants in common of the property, including J. S. and J. W. Smith, who were, not only surviving partners, but also heirs. Except in respect to existing debts of the firm, it was realty, subject to the law of descent, and descended to the heirs of J. G. Smith, to the extent of his one-third interest. The evidence does not show adverse possession by J. S. and J. W. Smith as between tenants in common. The evidence shows at most inaction on the part of complainants as tenants in common. They were simply quiescent. The surviving partners asserted no adverse claim known to them, or otherwise, and did no other

act equal to an ouster. The possession was not inconsistent with the tenancy in common.

■■ 5. Estoppel is also claimed by appellants, in that one of the heirs was present at the public bankrupt sale and observed the conduct of it, when there was no representation that the sale was only of an undivided interest, but purported to be of the whole interest.

Ordinarily the holder of a recorded title need not make known the existence of that title at a public sale which purports to be in contravention of that title. He need not give notice of that which all are conclusively presumed to know, and his mere silence does not operate an estoppel. But if a statement is made in his presence of such sort that good faith and fair dealing would demand a denial from him, his silence is a fraud and works an estoppel. Morris v. Sartain, 224 Ala. 318, 140 So. 373.

Nothing here appears to invoke such an estoppel. The deed was on record. No representation was made that called for a denial. No denial was necessary therefore. No estoppel from fraudulent inactivity results under such circumstances.

■ A plea was filed by the respondents, jointly, alleging the misjoinder of the trustee in bankruptcy of the estate of C. H. Hurst, the purchaser at the bankrupt sale of the Smith firm, in that he was an improper and unnecessary party.

Such defense, if good, was only available to the trustee himself, and the others were not interested in such defense, and it was in no sense proper matter in behalf of them all to abate the entire suit. Sims, Chancery Practice, § 181; Kelly v. Carmichael, 217 Ala. 534, 117 So. 67; Lacey v. Pearce, 191 Ala. 258, 68 So. 46; Rensford v. Magnus & Co., 150 Ala. 288, 43 So. 853.

There was no decree rendered against him, nor in his favor, and no one else has cause to complain. The court may award proper relief, if necessary parties are before it (section 6645, Code), though some are unnecessary.

We also note that there was no severance in the assignment of errors ordered by this court.

We have not undertaken to consider the sufficiency of such a plea, if it had been properly presented by him who claims that he was improperly joined, nor the proper method of testing its sufficiency. Sims, Chancery Practice, § 463.

The decree of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.