**TEXAS MORTGAGE COMPANY,**
Plaintiff-Appellant-Cross
Appellee,

v.

**PHILLIPS PETROLEUM COMPANY and
Phillips Pipe Line Company, Defend-
ants-Appellees-Cross Appellants.**

No. 72–1593.

United States Court of Appeals,
Fifth Circuit.

Dec. 11, 1972.

Rehearing Denied Jan. 5, 1973.

———◆———

Frank G. Evans, III, Joe G. Roady, Houston, Tex., for appellant.

E. H. Brown, Eugene C. Marshall, Houston, Tex., for appellees.

Before COLEMAN, AINSWORTH and DYER, Circuit Judges.

COLEMAN, Circuit Judge:

The plaintiff-appellant says:

"The sole issue presented by plaintiff-appellant, Texas Mortgage Company, is whether the District Court erred in refusing to grant judgment decreeing the title and right of possession of Texas Mortgage Company as against Phillips Petroleum Company and Phillips Pipe Line Company to the land in controversy in plaintiff's action in trespass to try title."

The appellees have cross appealed. They argue that plaintiff-appellee should not have been awarded money damages for the construction, over objection, of a second pipeline across property which the plaintiff formerly owned but which, during the progress of the litigation, had been conveyed to the State of Texas, reserving the right to pursue the lawsuit.

We affirm on both direct and cross appeals.

We think we may best describe the facts and the issues by setting forth, *in haec verba*, the memorandum opinion of the District Court:

## MEMORANDUM AND ORDER

The seeds of this lawsuit were sown in 1956, when two groups of cotenants, each owning an undivided one-half interest in a single tract of land, made differing and partially inconsistent pipeline right-of-way grants or easements to the same third party. The courts of the State of Texas have not been confronted with this exact situation and therefore have not passed upon the controlling point of law.

On January 25, 1956, one group of cotenants, which shall be referred to as the Korge group, owners of an undivided one-half interest in the tract of land, granted to Phillips *Pipeline* Company (hereinafter called Phillips Pipe) the right to construct a *single* pipeline across the subject land. Two days later, another group of cotenants, to be called the Turner group, owners of the other undivided one-half interest in said land, granted to the Phillips *Petroleum* Company (hereinafter called Phillips Pet) the right to lay a pipeline or *pipelines* across the land.

In 1956, subsequent to the aforementioned grants, Phillips Pipe constructed a single line which was not then challenged and is not here in issue. Later that year, the plaintiff M. W. Lee, acquired the Turner one-half interest.

Early in 1957, he also purchased the Korge one-half interest. In 1961, Lee conveyed the property to the Texas Mortgage Company which, subsequent to the filing of this suit, conveyed the land to the State of Texas for use as a prison farm.[1]

Approximately ten years after his initial purchase, Lee received a letter from Phillips Pet[2] indicating a desire on the part of that corporation to construct an additional pipeline and suggesting negotiations to resolve the asserted uncertainties resulting from the difference in terms of its two easement grants. This overture being unproductive, Phillips Pet ultimately communicated to Lee its intention to rely upon its claimed easement rights under the Turner grant. Over plaintiff's objection, Phillips Pet entered the land and constructed the additional pipeline at a location of its choice. Plaintiff thereupon filed this action in trespass to try title in the District Court of Brazoria County, Texas, alleging its ouster and trespass to establish its title and right to possession and to recover damages for the trespass. The suit was removed to this Court where jurisdiction exists by reason of diversity of citizenship. 28 U.S.C. § 1332.

Thereafter, the cause was tried and the facts were submitted to a jury on eleven special interrogatories, Rule 49(a), Fed.R.Civ.P., which, together with the jury's answers, are set out in full in the appendix. The jury's answers were consistent and cast defendants in liability.

Both parties thereafter filed motions concerning the jury's verdict. Plaintiffs moved for its adoption and the entry of judgment thereon. Defendants likewise moved for judgment contending that the verdict was, in effect, a legal nullity. Defendants' legal contentions are discussed below.

If Phillips Pet had no legal right to construct the second pipeline in 1966, plaintiffs are entitled to recover their damages sustained by reason of that action. The Court concludes that defendants acted unlawfully, and that judgment must enter upon the jury's verdict in favor of plaintiffs.

At no time during the Turner-Korge cotenancy did the defendants enjoy the right to construct more than a single pipeline across the property. It is well settled that a tenant in common cannot, without the precedent authority or subsequent ratification of his cotenants, impose an easement or dedication upon the common property in favor of a third party. Heilbron v. St. Louis Southwestern Ry. Co. of Texas, 52 Tex.Civ.App. 575, 113 S.W. 610 (Tex.Civ.App.—1908, no writ); Chenowth Bros. v. Magnolia Petroleum Co., 129 S.W.2d 446, 447 (Tex.Civ.App.—Dallas 1939, writ dismd. jdgmt. corr.); Clapp v. Atwood, 300

1. This conveyance to the State does not deprive plaintiffs of standing to sue because they seek to recover for damages done to the land when they owned it, and which obviously were reflected in diminution of the land's value when conveyed to the State. C. A. Wright, Law of Federal Courts § 13 (2d ed. 1970). Likewise, the transfer of the land did not divest the Court of diversity jurisdiction. C. A. Wright, supra. § 28.

2. Phillips Pipeline Company, the grantee of the Korge easement, was a wholly owned subsidiary of Phillips Petroleum Company, grantee of the Turner easement. On the instant record, it is unnecessary to decide whether the Pipeline Company is for all purposes a mere instrumentality of the Petroleum Company. See Williams v. Freeport Sulphur Company, 40 S.W.2d 817 (Tex.Civ.App.—Galveston 1930, no writ); cf. Kirby Lumber Corp. v. Karpel, 233 F.2d 373 (5th Cir. 1956); McDaniel Bros. v. Wilson, 70 S.W.2d 619, 621 (Tex.Civ.App.—Beaumont 1934, writ ref'd). Suffice it to say that for the purpose of the relevant transaction—the purchase of the two easements—it is obvious that the corporations acted in concert and as a single entity. In essence, Phillips Pipe and its employees acted as the agents of Phillips Pet in this undertaking. The jury so concluded, and also found that both easements were acquired for the benefit of Phillips Pet.

Mass. 540, 16 N.E.2d 67 (1938); Benjamin v. American Telephone & Telegraph Co., 196 Mass. 454, 82 N.E. 681 (1907); 15 Tex.Jur.2d Cotenancy § 13, n. 6; 86 C.J.S. Tenancy in Common § 111, 20 Am.Jur.2d Cotenancy and Joint Ownership § 103; 1 H.T. Tiffany, Real Property § 199, p. 654 (2d ed. 1920). Implicit in this is the principle that a tenant in common cannot effectively grant to a third party an easement conferring a greater liberty, privilege, or advantage than that granted by his cotenants. *Id.*

The grant of the multiple-line easement by the Turner group of cotenants to Phillips Pet would have "become valid and effective for the purpose of binding the grantor, if supplemented by exactly similar grants to the same person from the other cotenants. . . ."—1 H.T. Tiffany, supra, at p. 685. However, the Turner grant was never exactly supplemented. Instead, the only precedent authority from the Korge group of cotenants was the single-line grant which the jury found was intended by the parties to limit the owner of that grant to the construction, maintenance and operation of only one pipeline. Therefore, while the Turner-Korge cotenancy existed, the unsupplemented Turner multiple-line easement was ineffective to grant to Phillips Pet the right to construct more than a single pipeline over said land. The Korge grant having been restricted in unambiguous language to construction of a single pipeline by Phillips Pipe, its assigns, as well as Phillips Pet, were likewise so restricted. *Id.*

Thereafter, when Lee acquired the Turner group's interest and was briefly a cotenant with the Korges, and even later, after he acquired the Korge group's interest in the land—merging the fee title into himself—his title was not subject to the multiple-line easement which the Turners had granted to Phillips Pet. The Turner multiple-line grant, although in the plaintiff's chain of title, gave no more rights to defendants after title was merged than before. Benjamin v. American Telephone & Telegraph Co., supra; *see also*: Clapp v. Atwood, supra.[3] In sum, the union of cotenants' interests in a single title terminates the cotenancy, but does not by itself alter, enlarge, or diminish the rights of third persons which were conferred during the cotenancy. *Id.*

When W. M. Lee purchased the combined rights of the Turner and Korge groups in the land, he purchased their respective interests subject to whatever rights had been granted to defendants by them, and was estopped to deny the validity of whatever rights or title defendants had so received. Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 583 (1941); Waco Bridge Co. v. City of Waco, 85 Tex. 320, 20 S.W. 137 (1893); United States of America v. 1,078.27 Acres of Land, More or Less Situated in Galveston County, Texas (Civil Action No. 2662) (S.D.Tex., January 23, 1970) (per Noel, J.), aff'd. 446 F.2d 1030 (5th Cir., 1971). This estoppel, however, does not aid defendants here. As pointed out above, the inconsistent grants of the two different groups of cotenants failed to give defendants any vested right or title by which they could have placed a second pipeline upon the jointly owned land of the Turner and Korge cotenants. Therefore, the plaintiffs, standing in the shoes of the Korges, are entitled to assert the Korge group's right to oppose the construction of the second pipeline. Clapp v. Atwood, supra; Benjamin v. American Telephone & Telegraph Co., supra; 2 Thompson, Real Property § 469, pp. 24–25 (Perm.ed 1939)[4] As W.

---

3. No Texas decisions on this point have been found. The logic of the authorities cited above persuades this Court that the Texas courts would follow them in an appropriate case and therefore they are adopted here. *See*: C. A. Wright, supra, at § 58.

4. *See*: fn. 3 supra.

M. Lee and the mortgage company have asserted their objections, the defendants' unauthorized entry upon the land of another was a trespassory tort. Pilcher v. Kirk, 55 Tex. 208, 216 (1881).

In sum, as defendants failed to receive a multiple-line grant from the Korge cotenants, the multiple-line grant which Phillips Pet did receive from the Turner group was ineffective to bind the *joint* estates of the two sets of grantors. For all practical purposes, the Turner grant was of no benefit to Phillips Pet at the time it installed the second line upon plaintiffs' land.

To avoid this result, defendants place reliance upon the doctrine of equitable partition, whereby cotenancies have been judicially dissolved in order to effectuate a grant by one cotenant to a third party. In this regard, it is apparently the contention of defendants that the theoretical availability of such a remedy in 1957 should improve their position today. However, "as a prerequisite to the right of equitable partition, the parties against whom the remedy is sought must be joint owners of the estate sought to be partitioned." Thompson v. Whitfield, 203 S.W.2d 268, 270 (Tex. Civ.App.—Texarkana 1947, writ ref'd, n.r.e.). *See also*: Gilbreath v. Douglas, 388 S.W.2d 279, 281 (Tex.Civ.App.— Amarillo 1965, writ ref'd., n.r.e.) ; Luckel v. Barnsdall Oil Co., 74 S.W.2d 127, 131 (Tex.Civ.App.—Texarkana, 1934), aff'd sub nom. Barnsdall Oil Co. v. Hubbard, 130 Tex. 476, 109 S.W.2d 960 (1937). To the extent that partition might have been available to protect defendants' interest under the Turner easement, see Saulsberry v. Saulsberry, 121 F.2d 318 (6th Cir. 1941), this remedy clearly became unavailable when the Turner and Korge titles merged in Lee, thus terminating the requisite joint ownership nine years before the instant controversy arose. Cf. Corn v. First Texas Joint Stock Land Bank, 131 S.W.2d 752 (Tex. Civ.App.—Ft. Worth 1939, writ ref'd).

In any event, the facts of the instant case do not suggest the propriety of equitable relief in behalf of defendants. The typical case in which partition will be utilized to protect a grantee involves grants which were of a character to suggest that the interest conveyed was exclusive title to a strip, parcel, or easement, whether or not it was described by metes and bounds. Cf. Annot., Grant by Cotenant—Partition, 77 A.L.R.2d 1377 (1961). In the instant case, however, Phillips Pet created this predicament with open eyes, having notice of the existence of the two undivided interests at the time that it and its subsidiary, Phillips Pipe, procured inconsistent easements. Defendants actual knowledge of the inconsistency was clearly evidenced by their attempt to clarify Phillips Pet's rights prior to its unilateral installation of an additional pipeline in 1966. Therefore, having purchased the easement from the Turner group with full knowledge that the grantor was purporting to convey title to a multiple-line easement only as to an undivided one-half interest in said land, and having acted in reliance upon that grant with full knowledge of its limitations, and after seeking, but having been refused, an enlargement of the multiple-line grant to cover the Korge undivided one-half interest, defendants have sullied their hands and are now in no position to enjoy the belated and somewhat hypothetical assistance of equity. Cf. Humphreys-Mexia Co. v. Arseneaux, 116 Tex. 603, 297 S.W. 225 (1927) ; Frost v. Wolf, 77 Tex. 455, 14 S.W. 440, 443 (1890) ; Bartlett v. Terrell, 292 S.W. 273 (Tex.Civ.App.—San Antonio 1927, writ ref'd.).

Accordingly, it is Ordered that:

(1) Judgment for plaintiffs shall be entered on the jury's answers to the aforementioned interrogatories.

(2) The Clerk shall file this instrument and send copies to counsel of record.

DONE at Houston, Texas, this 26th day of July, 1971.

JAMES NOEL
JUDGE

This resulted in a judgment for Texas Mortgage in the sum of $4,000 for damages to the 160 acres across which the second line was installed plus interest from September 26, 1966, the date the suit was filed.

### The Contentions of the Parties

The direct appeal asserts that the District Court erred when it declined to decree in favor of Texas Mortgage Company "the title to and possession of the land" [on which the second line was built] as against the Phillips Companies.

The appellees respond that, "Texas Mortgage, having been awarded damages herein for the taking of an easement, may not also have judgment denying existence of the easement", especially since Texas Mortgage, in its Complaint, prayed for judgment for title and possession or alternatively for damages for that taken by the defendants and as diminution in value of the remainder.

Appellant answers this with the contention that the jury finding and judgment thereon measured only the damages for the trespass to the land and included nothing for the value of that actually taken.

### The Decision Here

We may begin the resolution of these contentions from a point of beginning which is accepted by both sides.

■ In Texas, a conveyance pendente lite does not terminate the litigation, but any judgment thereafter rendered is for the benefit of the purchaser pendente lite, Smith v. Olsen, 92 Tex. 181, 46 S.W. 631 (1898). In that case it was held: " * * * It is a well settled rule that, where the interest of either party to a suit is purchased after its commencement, the purchaser stands in the shoes of the party whose title has been conveyed to him; and the alienation pendente lite does not affect the progress or determination of the litigation. If the party who has conveyed his interest succeed in the litigation, the judgment inures to the benefit of his grantee. Hence, where the title of the plaintiff is conveyed while the suit is in progress, it proceeds in his name for the benefit of the purchaser."

On the face of it, then, the litigation had to proceed for the benefit of the State of Texas. The State, however, declined to intervene in the litigation.

■ The distinguishing point is that when Texas Mortgage Company conveyed the tract to the State of Texas on May 3, 1967 [under threat of condemnation], after the suit had been filed on September 26, 1966, the instrument of conveyance contained the following reservation:

"Grantor's right to sue and recover for any and all residual damage to the market value of the remainder of said Tract No. 1 occasioned by construction of said pipeline or pipelines shall in no way be affected by this conveyance. Grantor reserves the right to prosecute or settle *said cause of action* (italics ours) to the same extent that it could prosecute or settle had this conveyance not been made."

It inevitably follows that the rights of Texas Mortgage must be measured by the terms of its *reservation*.

The first sentence reserved the right "to sue and recover for any and all residual damage to the market value of the remainder of said Tract No. 1 occasioned by construction of said pipeline or pipelines".

There can be no doubt that by the judgment of the District Court the purpose of this reservation has, in fact, been accomplished.

This leaves only the second sentence of the reservation: "the right to prosecute or settle said cause of action to the same extent that it could prosecute or settle had this conveyance not been made".

It seems clear to us that this second sentence, of necessity, refers to the "cause of action" as it appeared in the immediately preceding sentence, to-wit, "any and all residual damage to the market value of the remainder * * * * occasioned by construction of said pipeline or pipelines".

As stated, this is exactly what the judgment of the District Court accomplished.

We are especially led to this view by the fact, which the parties well knew, that the Korge conveyance of January 25, 1956, had already conveyed a thirty foot easement across the property for "a twelve inch (12″) pipeline" and the Turner conveyance of January 27, 1956, had conveyed an easement for one or more pipelines, without limiting the width of the easement.

The basis for the action was that Phillips had constructed a second pipeline (as to ½ of the predecessor title) where only one had been authorized.

In any and all events, Phillips was already the owner of an easement of not less than thirty feet in width. There is no indication that the second pipeline was located outside that thirty foot strip.

The sole cause of action was that Phillips had constructed a second pipeline (as to ½ of the predecessor title) where only one had been authorized. *Phillips had simply misused an existing easement.*

For this, Texas Mortgage has recovered its damages within the clear meaning of its reservation. This is all that it reserved the right to do.

We therefore conclude that there was no error as to the remedy granted the plaintiff-appellant.

As to the cross appeal, Phillips contends that it had the right under the original easements to construct the additional line. We agree with the District Court that it did not.

Affirmed on both direct and cross appeals.