John Murrell, Lula Fain and Beulah Fain held as tenants in common title to approximately eighty acres of land in Elmore County, Alabama. Lula and Beulah Fain each owned a one-quarter undivided interest, and Murrell owned the remaining one-half undivided interest in the property. A spring-fed stream originates on and crosses through a portion of this property and, like at least six other streams in the area, empties into swimming pools and fishing ponds constructed and owned by an abutting landowner John G. Crommelin, Jr. These pools are operated by the Crommelin family as a commercial enterprise and serve as a recreational area for numerous Elmore County residents and others who pay an admission fee for the use of the pools, ponds and adjoining facilities.
In 1940, Murrell entered into the following agreement with Crommelin:
 Whereas, John Samuel Murrell, is the owner of an undivided interest in and to the following described lands situated in Elmore County, Alabama, to-wit:
 The South half of the Southeast quarter of Section 30, Township 18, Range 19, containing 80 acres, more or less,
 and whereas, John G. Crommelin, Jr., owns land in the vicinity of said lands above described, and natural streams and surface waters on the land of said Murrell run through and over the lands of said Crommelin, and
 Whereas, said Crommelin is desirous of preventing any obstruction of the flow of said surface waters and streams and of preventing any pollution of said waters which would in any wise affect the lands of said Crommelin or any lands [in] which said Crommelin may hereafter acquire any interest,
 Now, Therefore, in consideration of the premises, and in further consideration of the sum of Thirty-Five and no/100 Dollars in hand paid by said John G. Crommelin, Jr. to the said John Samuel Murrell, and in further consideration of other good and valuable considerations, the receipt of which is hereby acknowledged, I, the said John Samuel Murrell, a widower, hereby agree to the following:
 First: That I will forever refrain from obstructing any stream on the lands hereinabove described and will not in any manner do any act or permit any act which would directly or indirectly pollute or obstruct waters of said streams or pollute any surface waters on said above described lands, and in particular will prevent pollution by such acts as the emptying of sewage on said lands or the erection of stock corrals near running streams such as would pollute said waters.
 Second: That the said Crommelin be and he is hereby given the right and privilege of entering upon the above described lands and doing such acts as may be *Page 180 
necessary to insure the carrying out the provisions of the said contract, and in particular, to remove any obstruction or retardation of the flow of the waters over said lands, and/or sources of pollution, and may also deepen or widen the beds of said streams so as to facilitate and insure the flow of waters over and across said lands.
 This agreement shall be construed as a covenant running with the lands of said Crommelin and of the said Murrell, and shall bind said Murrell, his heirs, executors, administrators and assigns, same shall run in favor of the said Crommelin, his heirs, executors, administrators, and assigns, of the lands which said Crommelin now owns or other lands affected thereby in which said Crommelin may hereafter acquire an interest.
 TO HAVE AND TO HOLD to the said John G. Crommelin, Jr., his heirs and assigns, forever.
This agreement was recorded in the Office of the Probate Judge of Elmore County.
Six months after he executed this agreement with Crommelin, Murrell conveyed his one-half undivided interest in the property to Lula Fain. Two years later, Beulah Fain conveyed her one-quarter undivided interest to Lula, thus vesting in her sole ownership of the property.
In 1978, Lula Fain conveyed four acres of this property to Dennis and Carol Fain. Six months later she conveyed to them a ten foot strip which runs from their property to the stream and spring boils. Upon this strip Dennis Fain constructed a water system which runs from a pump located in the area of the spring boils to his newly built house. The water drawn from the stream through this system is used for domestic purposes, i.e., drinking, bathing, cooking, flushing toilets, washing clothes and watering the grass. The waste water from these activities flows into a septic tank Dennis Fain built on his property.
Soon after the Fain home and improvements were completed, Crommelin sued to enjoin the Fains from drawing water from the stream or operating their septic tank because, according to Crommelin, those activities both decreased the free flow of water and, because the concrete culvert Fain installed over the spring boils stirred up mud, polluted the remaining water which flows into his pools. Crommelin also sought damages for breach of covenant. The trial judge, hearing the evidence ore tenus, denied Crommelin's requested relief. Crommelin raises several issues on appeal.
 I
Crommelin contends the trial judge's conclusion that the covenant executed by Murrell is not binding upon the Fains is in error. He argues that the covenant is binding by way of either ratification or a novel theory of "covenant merger." Under this theory, he argues that when Lula acquired Murrell's burdened one-half interest, that burdened interest merged with her unburdened one-quarter interest and thus bound the entire three-quarter interest and, further, when Lula acquired Beulah's unburdened one-quarter interest, the entire interest became bound by the covenant. We reject both arguments.
When a tenancy in common exists, each cotenant, regardless of the quantum of his proportionate share, has an interest in and right to use all of the property held in common; no one cotenant has the right to the exclusive use or possession of any portion of the property. The only limitation upon a cotenant's use and enjoyment of the property is that he must not do any act which would interfere with his cotenant's rights, use and enjoyment of the common property. See 86, C.J.S. Tenancy in Common §§ 17-24 (1954).
As a general rule a cotenant may, without the knowledge or consent of his cotenants, deal with his separate interest or any fractional interest thereof as freely as he can with any other property he may own. Lee v. Lee, 271 Ala. 5,122 So.2d 139 (1960); Moore v. Foshee, 251 Ala. 489, 38 So.2d 10 (1948). Thus, he may convey by deed, Moore v. Foshee, supra; lease, SunOil Co. v. Oswell, 258 Ala. 326, 62 So.2d 783 (1953); license another to enter upon the property, *Page 181 Jasper Land Co. v. Manchester Sawmills, 209 Ala. 446,96 So. 417 (1923); or mortgage his interest, Giddens v. Reddoch,207 Ala. 297, 92 So. 848 (1922).
A cotenant may not, however, without the consent of the other cotenants, convey, lease, license or mortgage an interest in the property greater than that which the individual cotenant owns. In 20 Am.Jur.2d Cotenancy and Joint Ownership § 95 (1965), it is stated:
 Since there is, merely by reason of the existence of a cotenancy, no agency relationship between the cotenants, * * * one cotenant cannot ordinarily transfer or dispose of the interest of another cotenant in such manner as to be binding, unless duly authorized to do so. Nor can a cotenant, as a rule, bind his cotenants by any unauthorized attempt to alienate or encumber the entire estate or any specific part or portion thereof, or an undivided interest in any such portion. In the absence of authorization or ratification on the part of his cotenants, any dealing on the part of one cotenant in relation to the common property is a mere nullity insofar as their interests are concerned.
In 20 Am.Jur.2d Cotenancy and Joint Ownership § 96 (1965), appears the following:
 While an individual cotenant can deal with his own moiety or interest as freely as he can with any other property he may own, any alienation or encumbrance by one cotenant of the common property or of his cotenants' interest therein, in the absence of authorization or ratification on the part of the other cotenant, is a mere nullity insofar as their interests are concerned. But a transaction of this kind is void only as to the cotenants. It is not void as against the actor and may bind his undivided interest. In a proper case the courts will accord to the persons with whom he has dealt such relief as the facts may warrant insofar as that can be done without prejudice to the rights of the nonacting cotenant.
See Giddens v. Reddoch, 207 Ala. 297, 92 So. 848 (1922); Kiddv. Borum, 181 Ala. 144, 61 So. 100 (1913); Howze v. Dew,90 Ala. 178, 7 So. 239 (1890).
The grant of an easement by one cotenant poses a different problem and is subject to a different rule:
 One cotenant cannot, without the joinder of the others, grant an easement in the land. * * * A grant of an easement, made by one cotenant, would seem to be invalid for the reason that such a grant of an easement in an undivided interest in land is necessarily a nullity, so far as concerns the actual utilization of the land by the grantee. It involves an attempt by one cotenant, not to substitute another as cotenant in his place, as in the case of a conveyance or lease of his interest, but to enable a person, not a cotenant, to interfere, it may be perpetually, with the possession of the other cotenants.
Vol. II, Tiffany, The Law of Real Property, § 456 (3d ed. 1939). Stated more succinctly, "[s]uch a grant involves more than the grant or lease of his individual interest in a part of the property, since the easement, if given effect, would interfere with the rights of ownership in the property of all cotenants." Vol. II, American Law of Real Property, § 6.12 (1952).
The Murrell-Crommelin covenant purported to pertain solely to Murrell's undivided interest. However, because Murrell was obligated to not "permit any acts" which would obstruct or pollute the stream and because Crommelin was given the right to enter upon the property and remove any obstruction or source of pollution, the covenant by necessity involved more than just Murrell's undivided interest in the property. To that extent the Murrell-Crommelin covenant can be analogized to an easement.
In Texas Mortgage Company v. Phillips Petroleum Company,470 F.2d 497 (5th Cir. 1972), two groups of cotenants each owned an undivided one-half interest in a parcel of property. One group, the "Korge" group, granted to Phillips Pipeline Company an easement to construct a single pipeline across the common property. Two days later the other group, the "Turner" group, granted Phillips Pipeline's parent corporation, Phillips Petroleum, the right to lay "a *Page 182 
pipeline or pipelines" across the same property. Phillips Pipeline constructed a single pipeline; Phillips Petroleum constructed none.
M.W. Lee became a tenant in common with the Korge group when he acquired the one-half interest held by the Turner group. Lee later acquired the one-half interest owned by the Korge group. Ten years later Phillips Petroleum entered the property and, over Lee's objections, constructed a second pipeline. Lee then successfully prosecuted in federal district court an action against both Phillips Petroleum and Phillips Pipeline in trespass to try title. The court recognized the general rule that one cotenant cannot grant an easement over common property without the consent of the other cotenants, and stated:
 The grant of the multiple-line easement by the Turner group of cotenants to Phillips Pet[roleum] would have "become valid and effective for the purpose of binding the grantor, if supplemented by exactly similar grants to the same person from the other cotenants. . . ." — 1 H.T. Tiffany, supra, at p. 685. However, the Turner grant was never exactly supplemented. Instead, the only precedent authority from the Korge group of cotenants was the single-line grant which the jury found was intended by the parties to limit the owner of that grant to the construction, maintenance and operation of only one pipeline. Therefore, while the Turner-Korge cotenancy existed, the unsupplemented Turner multiple-line easement was ineffective to grant to Phillips Pet[roleum] the right to construct more than a single pipeline over said land. * *
470 F.2d at 500.
Addressing the question of Lee's rights upon acquisition of the Turner and Korge interests, the court stated:
 * * * when Lee acquired the Turner group's interest and was briefly a cotenant with the Korges, and even later, after he acquired the Korge group's interest in the land — merging the fee title into himself — his title was not subject to the multiple-line easement which the Turners had granted Phillips Pet[roleum]. The Turner multiple-line grant, although in the plaintiff's chain of title, gave no more rights to defendants after title was merged than before * * *. In sum, the union of cotenant's interests in a single title terminates the cotenancy, but does not by itself alter, enlarge, or diminish the rights of third persons which were conferred during the cotenancy. * * *
 When M.W. Lee purchased the combined rights of the Turner and Korge groups in the land, he purchased their respective interests subject to whatever rights had been granted to defendants by them; and was estopped to deny the validity of whatever rights of title defendants so received. * * * This estoppel, however, does not aid defendants here. As pointed out above, the inconsistent grants of the two different groups of cotenants failed to give defendants any vested right or title by which they could have placed a second pipeline upon the jointly owned land of the Turner and Korge cotenants. Therefore, the plaintiff[ ], standing in the shoes of the Korges, [is] entitled to assert the Korge group's right to oppose the construction of the second pipeline. * * *
470 F.2d at 500 (citations omitted).
Applying the rule and rationale of Texas Mortgage to the instant case, we reject Crommelin's covenant merger theory and conclude that because neither Lula nor Beulah Fain consented to the "easement" or covenant granted by Murrell, it was ineffective to bind their respective rights in the common property either at the time Murrell executed the instrument or at the time Lula acquired Murrell's interest in the property.
Without elaborating upon our reasoning, we conclude that the facts in this case do not support Crommelin's argument that the covenant was ratified by either Lula, Beulah or Dennis Fain. Thus, we find no error in the trial judge's determination that the covenant was not binding upon any of the Fains. *Page 183 
 II
Crommelin contends the trial judge erred in failing to either find or rule upon his prescriptive rights. It is his contention that such rights arose from his acts of entering upon the Fain-Murrell tract, dynamiting beaver dams and clearing and scrubbing the streambed.
We note that this is not a case where an upper riparian owner asserts prescriptive rights against a lower riparian owner, but instead is a case where a lower riparian owner alleges the acquisition of prescriptive rights in the water flowing over the land of an upper riparian owner. On this point it has been stated:
 A prescriptive right may be acquired against lower riparian owners by complying with the requisite essentials for acquiring such rights. Upon the other hand, owing to the equal rights of riparian owners to the use of the waters of a certain stream, and that under the common law their rights are not lost by the non-use of the water, it is held that a lower riparian owner can not acquire by prescription the right to receive the water of the stream for some extraordinary use of the water in excess of his natural rights as against the upper riparian owners, since a lower use in no way interferes with the natural flow above, and, therefore, there is no invasion of the rights above. In other words, it is held that there is no such thing as a prescriptive right of a lower riparian proprietor to receive the waters of the stream as against the upper owners. The theory upon which the authorities hold this rule is that if a riparian owner diverts water which otherwise would flow down to a still lower owner, that use is adverse. But upon the other hand, the water which comes to him would come in any case, and there is nothing adverse to any one in merely receiving it that could be said to give a prescriptive right enabling him to prevent the reasonable use of the water by an upper owner. In other words, if no wrong is done, no prescriptive right can be acquired.
Kinney, Irrigation and Water Rights, § 1041, pp. 1862-64 (2d ed. 1912) (citations and footnotes omitted).
As is clear from the foregoing statement, one of the essential elements for the acquisition of prescriptive rights is that the use of the water must be adverse or hostile in character such that it invades the rights of the riparian owner. See 93 C.J.S. Waters §§ 159 162 (1956); 78 Am.Jur.2d Waters § 350 (1975). This element is absent in the present case.
Crommelin's activities in and around the stream were conducted with Murrell's permission under the covenant and will not, at least as to Murrell, provide a basis for claim of prescription. Stewart v. White, 128 Ala. 202, 30 So. 526
(1901). Nor do we think those activities were adverse to the rights of Lula and Beulah Fain. The two sisters, as riparian owners, had the common law right to
 the natural flow of the water of [the] stream through or along [their] land, in its accustomed channel, undiminished in quantity and unimpaired in quality, except as the accustomed flow may be changed by the act of God, and except as may be occasioned by the reasonable use of the stream by other like proprietors.
93 C.J.S. Waters § 9, pp. 608-10 (1956). Crommelin's acts of blasting beaver dams and clearing and scrubbing the streambed in no way interfered with these rights. There was no diversion of water from the Murrell-Fain tract either before it reached the tract or while it was coursing over the tract. Crommelin did not actively deny or deprive either Lula or Beulah of the right to use the water if they so desired; his actions merely facilitated the flow through the Murrell-Fain tract of that water which would eventually flow onto his land in any event. These actions and their resulting effects fall short of the adverse or hostile acts necessary to support a claim of prescription. Given that Crommelin acquired no prescriptive rights in the stream, it follows that the trial judge cannot be put in error for failing to either find or rule upon those rights. *Page 184 
 III
In his final decree, the trial judge stated
 That the actions of the defendants with respect to the stream which feeds the swimming pool of the plaintiffs are legal and reasonable and pose no clear, immediate and illegal threat of danger to the property interest of the plaintiffs.
Crommelin argues that this is erroneous in that it denies his riparian rights. We disagree.
It is beyond dispute that both Crommelin and Fain, as landowners abutting a stream, have certain riparian rights. We do not think that Crommelin's rights have been unlawfully violated by Fain's tap. The water drawn by Fain is used solely for domestic purposes, i.e., drinking, cooking, bathing, washing clothes and flushing toilets. The waste water is not returned to the stream untreated, but is filtered through Fain's septic tank. It has long been established that
 every riparian proprietor has an equal right to have the stream flow through his lands in its natural state, without material diminution in quantity or alteration in quality. But this rule is qualified by the limitation * * * that each of said proprietors are entitled to a reasonable use of the water for domestic, agricultural, and manufacturing purposes.
North Alabama C.I. Ry. Co. v. Jones, 156 Ala. 360, 366-67,47 So. 144, 146 (1908) (citations omitted). See also, Elmore v.Ingalls, 245 Ala. 481, 17 So.2d 674 (1944); Jones v. TennesseeCoal, Iron R. Co., 202 Ala. 381, 80 So. 463 (1918); Ulbrichtv. Eufaula Water Co., 86 Ala. 587, 6 So. 78 (1888).
Dennis Fain's use of the water is for domestic purposes and the amount used is reasonable. The facts that as much as thirty percent of Crommelin's pool water comes from the stream and that in the dry season the supply will be diminished by Fain's use cannot operate to give Crommelin any greater rights or make Fain's use unreasonable. Just as an upper riparian owner may not take from the stream a "quantity [of water] sufficient to affect injuriously the rights of the proprietor below," Steinv. Burden, 29 Ala. 127 (1856), a lower riparian owner may not draw all of the water and then complain that the upper riparian owner's reasonable use unreasonably affects his rights in the water.
 IV
During trial, the judge sustained defendants' objections to testimony which Crommelin contends is relevant to the issues of prescriptive rights and ratification. Because Crommelin acquired no prescriptive rights in the Murrell-Fain tract and because the ratification theory was unsupported by the facts, the exclusion of this evidence cannot, as Crommelin contends, be deemed reversible error.
 V
Crommelin contends the trial judge erred to reversal by denying his request for a jury to determine all the issues triable by a jury. We disagree.
The original complaint filed by Crommelin was amended and subsequently supplemented and amended again. Several counts in his complaint were dismissed upon the defendants' motion. At the time of trial, under the caption "PART ONE — ACTIONS IN EQUITY," Count I of the complaint alleged that "the taking of said water from said stream * * * will diminish the water available for the Plaintiffs' operation of Plaintiffs' swimming pool and fishing lakes," that "the installation of a septic tank * * * constitutes an actual and potential source of pollution to the water supply used by the Plaintiffs" and further that the acts of the defendants "obstruct[ ] the free flow of waters which are the source of water supply for the operation of the swimming pool and fishing lakes of the Plaintiffs and diminish the amount of water available to the Plaintiffs * * *." According to the complaint, the acts of the defendant violated the covenant and, "[a]s a result of the defendants' activities * * * plaintiff John G. Crommelin, Jr.'s contractual rights of covenant [have] been violated. * * *." In *Page 185 
Count II (a), it was alleged that the defendants' activities violated Crommelin's "common law riparian rights to the unobstructed and unpolluted use of the streams, springs and rivulets"; in Count II (b) it was alleged that the defendants' activities violated Crommelin's common law prescriptive rights. As to Counts I, II (a) and II (b), Crommelin prayed for injunctive relief.
In Count III, under the caption "PART TWO — ACTIONS-AT-LAW," it was alleged that the covenant was valid and binding upon the defendants, that the defendants knowingly and wilfully violated the contract by obstructing and/or polluting the stream, and
 [a]s a result of said breach of contract, plaintiffs' riparian rights were violated and the waters used in plaintiffs' pool at Harrogate Springs were polluted and obstructed. In accordance with paragraph Second of the covenant authorizing plaintiff John G. Crommelin, Jr. to do "such acts as may be necessary to insure the carrying out the provisions of the said contract" plaintiffs have suffered the damages of the legal expenses of hiring an attorney, of taking depositions, and of other necessary legal expenses to enforce the covenant. The aforesaid pollution, obstruction, and legal expenses have all caused plaintiffs great damage. [emphasis added]
As to this count, Crommelin prayed for both compensatory and punitive damages.
Crommelin concedes that Counts I, II (a) and II (b) were properly triable by the judge alone in that the relief sought was equitable in nature. He contends, however, that a jury should have passed upon the allegations contained in Count III, in that the relief sought was damages.
Rule 38 (a), ARCP, provides that "[t]he right of trial by jury as declared by the Constitution of Alabama or as given by a statute of this state shall be preserved to the parties inviolate." Judicial construction of this rule and its counterpart in the Federal Rules of Civil Procedure has given rise to the rule that when both legal and equitable issues are joined in one case the order of trial must be arranged so that the decision of the equitable issues by the judge does not operate to deny the trial by the jury of the legal issue. See,e.g., Dairy Queen v. Wood, 369 U.S. 469, 82 S.Ct. 894,8 L.Ed.2d 44 (1962); Beacon Theatres v. Westover, 359 U.S. 500,79 S.Ct. 948, 3 L.Ed.2d 988 (1959); Cumens v. Garrett, 294 Ala. 535, 319 So.2d 665 (Ala. 1975); Poston v. Gaddis, 335 So.2d 165
(Ala.Civ.App.), cert. denied 335 So.2d 169 (Ala. 1976). The foregoing rule notwithstanding, we do not think the denial of the jury trial in this case mandates the reversal of the judgment below.
Setting to one side the allegations in Counts I, II (a) and II (b) for which Crommelin requested equitable relief, and focusing upon the allegations in Count III, we note that those allegations are couched in terms of breach of contract. The trial judge was called upon to determine whether, as a matter of law, the covenant was binding upon the defendants. He ultimately and correctly determined that it was not binding. It follows that if the covenant was not binding upon the defendants, they could not, as a matter of law, have breached that contract. Thus, even if a jury had been empaneled to hear the case, a directed verdict for the defendants on Count III would have been in order. We do not think that, under these circumstances, Rule 38 (a) mandates a reversal for a trial of an issue which the plaintiff never would have been entitled to put before a jury if one had been present.
 VI
Finally, Crommelin argues that the trial judge erred in failing to issue findings of facts and conclusions of law on the questions of prescriptive and riparian rights, why the covenant was not binding upon the Fains, and why a trial by jury was denied, as Crommelin had requested at the close of all the evidence.
Rule 52, ARCP, according to which Crommelin requested findings of fact and conclusions of law, provides in part:
 In all actions tried upon the facts without a jury * * * the court may upon *Page 186 
written request and shall when required by statute, find the facts specially and state separately its conclusions of law thereon * * *.
(emphasis added) The language of this rule makes clear that the issuance of findings of fact and conclusions of law is discretionary with the trial judge. See Provident Life Accident Ins. Co. v. Hanna, 294 Ala. 37, 311 So.2d 294 (1975). There was no error in failing to issue the findings of fact and conclusions of law.
For the foregoing reasons, the judgment below is due to be affirmed.
AFFIRMED.
TOLBERT, C.J. and FAULKNER, EMBRY and ADAMS, JJ., concur.